## GREEN *v.* GREEN.

Where a husband and wife conveyed lands in trust for the sole and separate use of the wife and for the children of the two parties, during the wife's life in absolute property, as if she were a *feme sole,* and free and clear of "any right, title, and estate, whether as tenants by the curtesy or otherwise, of her present or any future husband, and from his control and from any liability for his debts, and upon trust and to hold and dispose of and convey the said premises in such manner and to such uses, interest, and purposes as the wife may from time to time direct, by any last will and testament, or other testamentary writing, of what form soever, which she, the wife, notwithstanding her present or any future coverture, shall and may direct, limit, and appoint; and in the absence of any such direction, limitation, or appointment, or subject thereto, or remainder after her death, to her heirs at-law of the wife"— the rule in Shelley's case does not apply. A fee simple is not created in the wife; and a *deed* by her, her husband and her trustee conveying or pledging the property, is void and may be set aside by herself and her children. She could pass title only by a testamentary writing of some form.

APPEAL from the Supreme Court of the District of Columbia. The case was thus:

Thomas Green, by deed dated January 15th, 1867, conveyed certain real estate in Georgetown, D. C., to James Green, in fee in trust. The trust was in these words:

"For the sole and separate use of Catharine Green (wife of the said Thomas) and for the children of said Thomas Green and Catharine Green, during her life, in absolute right and property, as if she was a *feme sole,* and free and clear of any right, title, and estate, whether as tenants by the curtesy or otherwise, of her present or any future husband, and from his control and from any liability for his debts, and upon trust and to hold and dispose of and convey the said premises in such manner and to such uses, interest, and purposes as she, the said Catharine Green, may from time to time direct, *by any last will and testament, or other testamentary writing, of what form soever,* which she, the said Catharine Green, notwithstanding her present or any future coverture, shall and may direct, limit, and appoint; and in the absence of any such direction, limitation, or appointment, or subject thereto, or remainder after her death, to her heirs-at-law of the said Catharine Green."

On the 21st of November, 1868, James Green, as trustee, and Thomas Green and Catharine Green united in a deed to one Ward, whereby they conveyed to him in fee simple the premises described in the deed first set forth, in trust to secure the payment of a note for $6000, payable six months from date, with interest, and bearing even date with the deed, payable to the order of Lewis Wells. At this time Mr. and Mrs. Thomas Green had two daughters, both under age.

This note having matured, and continuing unpaid, Ward, at the request of Wells, advertised the premises for sale, and was proceeding to a sale thereof under the power contained in the deed to Ward.

Hereupon Mrs. Green, and the two infant daughters by their guardian, filed a bill in the court below—the bill in this case—against the trustee, the husband, and Ward, alleging that the deed to Ward was improvidently executed; that Mrs. Green had no power to appoint or limit the fee simple of the premises therein described by deed, but only by a last will and testament, or a testamentary writing; that the deed to Ward was accordingly void; that the powers contained in it were unauthorized by the deed of trust to James Green for their benefit; that the title obtained under the deed to Ward would impair the equitable title of the said Mrs. Green and of her children under the deed for her and their benefit, and asking that the deed to Ward might be set aside, and an injunction issue restraining Ward from selling under the alleged authority of the deed to him.

The trustee and the husband answered, admitting the facts as alleged.

Ward answered denying that the deed was void. His position was that under the rule in Shelley's case, the wife became, by the conveyance in trust to James Green, the owner of the property in fee simple; that the estate granted to her for life, and the remainder to her heirs-at-law, being both equitable estates, united in her as an estate of inheritance, and without reference to the exercise of the power of appointment; that, being the owner of the fee, her deed to Ward carried the full title to him.

· The court below decreed a perpetual injunction, and that the defendant, Ward, be absolutely enjoined and prohibited from selling, or attempting to sell, the property described in the trust deed, except the life interest of Mrs. Green in one-third thereof, and that the defendants below pay the costs of suit.

From this decree the defendants appealed to this court.

*Messrs. L. S. Wells and W. B. Webb, for the plaintiff in error; Mr. W. S. Cox, contra.*

Mr. Justice HUNT delivered the opinion of the court.

In Shelley's case,* the rule is thus laid down : " that when the ancestor, by any gift or conveyance, taketh an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, the heirs are words of limitation of the estate and not words of purchase."

Mr. Preston uses the following language, which is approved by Chancellor Kent:† "When a person takes an estate of freehold legally or equitably under a deed, will, or other writing, and in the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality to his heirs, or heirs of his body, as a class of persons to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

The trust deed of Thomas Green of January 15th, 1867, creates the following trusts, to which the premises are subjected :

1. To the use of Catharine Green and the children of Thomas Green and herself during the life of Catharine Green. There are two such children. Catharine and her two children are, therefore, joint tenants, or tenants in common of the estate during the life of Catharine. The words,

---

* 1 Reports, 219.

† 1 Preston on Estates, p. 263 ; 4 Kent's Commentaries, 215.

" as if she were *feme sole*," " free and clear of any right or control of her present or future husband," do not define the estate, but have the effect simply to exclude any possible claim on the part of her husband or his creditors.

2. To such uses and purposes as the said Catharine may, by testamentary writing, limit and appoint.

3. In the absence of such limitation, or subject thereto, or remainder after her death, to the heirs-at-law of the said Catharine.

It is contended that these trusts create an estate in fee simple in Catharine Green, which, by her deed to Mr. Ward, has become vested in him.

The rule in Shelley's case is applicable to trust estates where both the life estate and the remainder are of the same character. The legal effect of the union of the estates, as declared by that rule, does not occur where the life estate is of an equitable character and the remainder is a legal estate, or *vice versa*. Both estates must be of the same character.* The Court of Chancery does not, however, consider itself tied up to an implicit observance of the rule in respect to limitations which do not immediately vest the legal estate.†

A distinction is also given by Mr. Fearne to the effect that a trust or use created by deed will often be held to create an estate in the heirs named which cannot be cut off by the act of the tenant for life, when the same effect would not be given to an estate created by like language in a devise. The reason given, viz., that in the former case there may often occur a valuable consideration in the intention to make provision for the issue of an intended marriage does not exist when the transaction arises after marriage, but still the rule is to some extent a rule of property.‡

Mr. Cruise, however, says that the same mode of construction is adopted in case of deeds as in case of devises;§ and so is the case of *Ayer* v. *Ayer*,‖ in Massachusetts.

After commenting on various authorities on this subject,

---

* Fearne on Remainders, 62; Ware v. Richardson, 3 Maryland, 505.
† Fearne on Remainders, 3d ed., p. 61.          ‡ Ib. 78–81.
§ 1 Cruise's Digest of Real Property, 459.          ‖ 16 Pickering, 330.

Mr. Fearne adds: " This brings us to those cases of limitations in trust, in decreeing the execution of which the Court of Chancery so far departs from that which would be the legal operation of the words limiting the trust, if reduced to a common-law conveyance, as to construe the words *heirs of the body of the cestui que trust,* although preceded by a limitation for life, as words of purchase and not of limitation." Such was the case of *Papillon* v. *Voice,** where A. devised a sum of money to trustees, in trust, to be laid out in lands and to be settled on B. for life, remainder to trustees during the life of B., to support contingent remainders, remainder to the heirs of the body of B., remainder over with power to B. to make a jointure. It was decreed that B. should have but an estate for life in the lands so to be purchased, and Lord Chancellor King declared that the diversity was between the will passing a *legal* estate and leaving the estate *executory,* so that the party must come into the Court of Chancery in order to have the benefit of the will, that in the latter case the intention should take place and not the strict rules of law.†

The case of *Bagshaw* v. *Spencer*‡ is quite instructive in its resemblance in some of its facts, to the present case, and in the principle finally announced by Lord Hardwicke, viz., that there is a distinction between a trust in equity and a mere legal estate, and that in the latter class the words must be taken as they stand according to their legal determination, while a different rule prevailed in regard to trusts.§

Trusts are the mere creatures of confidence between party and party, totally distinct in almost every quality from those *legal* estates which are the subjects of tenure. They are in their nature independent of tenure, and therefore not the object of those laws which are founded in the nature of tenure. They are rights arising solely out of the intent of the party who created them, and therefore such intent could be the only guide in the execution of them.‖

---

* 2 Peere Williams, 471.          † Ib. 478.
‡ 1 Vesey, 142, S. C.; 2 Atkyns, 246, 570, 577.      § Fearne, 88.
‖ Fearne, 89.

*Ware* v. *Richardson**\* is a case like the one before us, governed by the laws of Maryland, and strikingly akin to it in its main facts.   In that case Mrs. Kennedy, "in consideration of the natural love and affection which she hath and beareth towards Elizabeth Richardson, and in consideration of five shillings to her paid by Samuel N. Ridgely, did grant, bargain, sell, enfeoff, and convey to the said Samuel, his heirs and assigns," certain property described, to have and to hold in trust, first, that Mrs. Kennedy should enjoy the same during her own life, and after her decease, upon the further trust, that Elizabeth Richardson, during her natural life, should hold and enjoy the same, the rents, issues, and profits thereof, the same to convert to her own proper use and benefit, as if she were *feme sole,* without let or interference from her husband or liability for his debts; "and from and immediately after the death of the said Elizabeth, then to, and for the use and benefit of the legal heirs and representatives of the said Elizabeth, and to and for no other intent and purpose."

As in the present case, it was there contended that by the rule in Shelley's case Elizabeth Richardson took a fee, and that the estate was liable for her debts.   The point was elaborately argued by Mr. W. H. Norris in support of this contention, and Mr. T. S. Alexander in opposition thereto, before the Court of Appeals of Maryland.   That court held (Mr. Justice Mason delivering its opinion) that this deed created but an equitable life estate in Mrs. Richardson, and that it executed the legal estate in the heirs; that where the estate limited to the ancestor is an equitable or trust estate, and the estate limited to the heirs is an executed use or a legal estate, the two will not coalesce in the ancestor.   The rule in Shelley's case was held not to be applicable, and the estate was adjudged to have passed upon her death to her children, Charles and Robert.

The cases of *Doe* v. *Considine,*† *Croxall* v. *Shererd,*‡ and of *Daniel* v. *Whartenby,*§ also bear upon the question before us.

---

\* 3 Maryland, 505.    † 6 Wallace, 458.    ‡ 5 Id. 268.    ‡ 17 Id. 639.

In the last case the question arose under a devise "to Richard Tibbitt during his natural life, and after his death to his issue by him lawfully begotten of his body, to such issue, their heirs and assigns forever," with limitations over. It was held that the rule in Shelley's case did not govern, and that Richard took a life estate only. It is not as pointed in its authority as the case of *Ware* v. *Richardson,* for the reason : 1, that the question arose upon a will and not upon a deed; 2, that the limitation was not to Richard's heirs simply, but to a class equivalent to the children of Richard.

To adjudge that the deed of January 15th, 1867, transferred and conveyed this property in fee to Mrs. Green, so that by the common law her husband would have had as tenant by curtesy an immediate and continuing right to the enjoyment of the rents and profits during his life, and so that her two children would have in it no estate legal or equitable, would be in manifest violation of the intention of the parties to that deed. A rule of the law of tenure, which would require us so to hold, would work a monstrous perversion of justice. We are satisfied that there is no such rule, and that a compliance with the evident intention of the parties is in accordance with the rules of law.

DECREE AFFIRMED.