### ROSE ET AL. v. RAMBO.

[82 South. 149, Division A. No. 20671.]

1. WILLS. *Construction. What law governs.*
   Where the laws of different jurisdictions are involved in the interpretation of a will for the purpose of ascertaining the testator's

intention as therein expressed, the words used by him therein, in the absence of circumstances indicating that he had the law of an another jurisdiction in mind, must be interpreted in accordance with the law of his domicile.

2. WILLS. *What law governs. Devise to heirs.*
   Under 4 Shannon's Ann. Code of Tenn., section 4163 *et seq.*, a devise of lands in Mississippi to the "heirs" of a Tennessee testator's daughter living in Tennessee was to the person or persons appointed by the law of Tennessee to succeed to her real property should she die intestate; such persons in this case being her sister and brother and not her husband.

APPEAL from the chancery court Lunica county.
HON. JOE MAY, Chancellor.

Suit by Anna E. Rose and others against T. D. Rambo. From a decree dismissing the bill, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*St. John Waddell,* for appellants.

First. The learned counsel who wrote reply brief in answer to the question as asked by the court as to whether the statutes of the state of Tennessee include the husband as an heir of the wife, admits that they do not except in cases where there are no other heirs capable of inheriting,

He further admits that under the laws of descent and distribution in the state of Tennessee, the husband only takes an estate by courtesy in the lands of his deceased wife where she has other heirs capable of inheriting same, and he further admits that if the land in controversy was in Tennessee and the wife having only a life estate in it, the husband would have no interest in it but it would go to the brothers and sisters.

Learned counsel further admits that the word "heirs" in Tennessee is usually construed to mean those persons who would inherit particular property, whether real or personal according to the laws of descent and distribution as to that particular property.

These admissions answer fully the second question asked by the court as we have heretofore answered it, and in support of which we cited the statutes and, decisions of the state of Tennessee.

Second. As to the first question asked by the court as to whether the language used should be interpreted in accordance with the laws of Tennessee or those of Mississippi, the position is taken by learned counsel that it should be construed in accordance with the laws of the latter state, and further on in his brief, he gives his reason for this as being because the land is situated in the state of Mississippi because, first, the word "heirs" in Tennessee has not such a fixed and settled meaning as to make it a rule of property; and, second, because the case, at bar is governed by the Mississippi statute abolishing the rule in Shelley's case.

As to learned counsel's first reason, it is possible we may not have understood the same correctly, but if we have, then we beg to say that the word "heirs" simply designates a class of persons and is never used for the purpose of controlling title to property, but is simply used in wills, conveyances or statutes to designate those who shall or shall not take property by inheritance. Just what application the decision in *Ball* v. *Phelan,* cited by learned counsel can have on this proposition, we confess we are unable to see.

Learned counsel's second reason that the language used in the will under consideration should be interpreted according to the laws of the state of Mississippi because this case is controlled by the statutes of that state, is equally as hard to understand.

The statute of Mississippi abolishing the rule in Shelley's case is in aid of wills that devise a life estate with remainder over to the life tenant's children, or issue, or heirs at law, and while we do not admit that this statute is fully applicable to this case, yet, assuming for argument that it is applicable, we respectfully sub-

mit that it throws no light on the question of who Dr. Dunlap meant and intended in the use of the word "heirs" as used in his will. Counsel for appellees evidently takes the position that because the statute of Mississippi abolishing the rule in Shelly's case made valid a devise of property to one for life with remainder to his heirs, and that the heirs would take as purchaser by virtue of the remainder so limited to them, therefore that whenever thereafter a will' should contain a devise of this kind of lands in Mississippi, that the word "heirs" should be interpreted to mean those contemplated by this statute, and would override the intention of the donor in making the devise as to who he meant by the word "heirs."

In other words, the intention of the donor in designating persons to take the remainder estate is to be supplanted and overruled, and new persons substituted by virtue of the statute.

We respectfully suggest that the *pole star* interpreting the language used in wills is to first ascertain from the whole instrument and the surrounding circumstances, the intention and purposes of the testator, and when this intention and purpose is once ascertained and does not contravene any settled statute or rule of public policy in the state where the land is situated, that this intention rises to the dignity of the law of the case and is controlling and all rules of construction become subservient to it.

No better exposition of the law on this proposition can be found than in the language used by Judge WHITFIELD in delivering the opinion of this court in the case of *Ball* v. *Phelan*, where he went into an exhaustive discussion of this principle, and this, too, in a Tennessee will devising lands situate in Mississippi, in which he quotes with approval the rule set forth in 22 Am. & Eng. Enc. of law (2 Ed.), page 1366; *Ball* v. *Phealan*, 94 Miss. quotation from bottom page 339.

Under the law of Tennessee, as admitted by counsel in his reply brief in the case at bar and under the statutes and judicial decisions of the state of Tennessee, being the law of the domicile of the testator of the will under consideration the next of kin or the brothers and sisters of Mrs. Rambo take the property in controversy as her heirs at law.

Learned counsel speaks in his brief of construing the word "heirs" and admits that under the judicial decisions of the state of Tennessee, the gift over to the heirs of Mrs. Rambo would be those who, in the absence of a will, would inherit the property under the laws of descent and distribution and claims that in the case at bar her husband, the appellee, would be the only heir, evidently meaning under the law of Mississippi, as he would be the only one who would inherit from his wife in that state, but that if construed under the laws of Tennessee, then he would not inherit or be the heir.

In this case the appelleee would not inherit anything from his wife under the laws of Mississippi because she never owned anything but a life estate in the land; therefore, if Mr. Rambo, the appellee, takes any interest at all in the land he must do it under the will of Dr. Dunlap and must demonstrate that because he would have been a forced heir in Mississippi to property there owned by the wife in fee, that Dr. Dunlap intended and meant that the property in controversy should go to a forced heir of his wife instead of her natural heirs or next of kin under the general law of descent and distribution.

Again counsel for appellee says that the carrying out of Dr. Dunlap's intention according to our contention in this case, would mean that the property of his daughter would go to his heirs instead of the daughter's heirs, and that if he had intended this, he would have used the words "to my heirs forever" instead of "to their heirs forever," and that the effort of the ap-

pellants is not to give the property to the heirs of Mrs.
Rambo but to the heirs of Dr. Dunlap, and if he had
meant for this to be done it would have been simple for
him to have said so in his will.

This is mere begging the question and is assuming
that Mrs. Rambo's heirs, according to the general
statute of descent and distribution of both in Mississippi
and Tennessee, could not, at the same time be the heirs
of Dr. Dunlap and simply because this is the case it does
not militate against his intention that this should be
done or prevent that intention from being a valid one
and a lawful intention and perfectly natural under the
circumstances.

Again counsel takes the position that the language
used by Dr. Dunlap in his will would under the rule in
Shelley's case, and in the event of the death of Mrs.
Rambo without leaving issue of her body surviving
her, having the effect of enlarging her life estate into
a fee.

The rule in Shelley's case has long since been abolish-
ed in Tennessee and some of the cases referred to by
counsel in his reply brief are cases where an estate for
life was given with remainder over to the heirs, or to
the children, or to the lawful heirs of the first taker,
and these devises have been uniformily upheld in Ten-
nessee. Particularly on this point see the case of *Ste-
wart, et al.,* v. *Drake, et al.,* 1 Higgins C. C. A. (Tenn.),
page 332, and the numerous authorities cited.

This very proposition was made by learned counsel
in the case of *Ball* v. *Phelan, supra,* wherein there was
a devise to Julia Phelan for life and at her death to
her children, and in default of children, or in the event
of their dying unmarried before reaching the age of
twenty-one years then with remainder over to Bettie
Selden. The contention made was that Julia took an
absolute fee, the will being made before the rule in
Shelley's case was abolished in Mississippi, yet Judge

WHITTFIELD held that the limitation over was good as a devise by implication of the fee to the children of Julia, and in fact, ridiculed the idea of a will which expressly limits the estate of the first taker to a life estate being enlarged to a fee, and on this point Judge WHITFIELD said:

"The complete answer to this line of argument is that if the court is driven in this case to imply some devise, it should most assuredly imply a devise in harmony with the perfectly plain, paramount purpose of limiting Julia to a life estate, which devise would necessarily then be a devise of the remainder to the children of Julia. Assuredly, in the face of the thrice-repeated purpose to limit Julia to a life estate, and in the face of the most anxious purpose to exclude the husband from any possible interest in his estate through the children or through Julia in any manner whatever, it would be a most extraordinary construction, and a most flagrant perversion of the purpose of the testator to hold that there is an implied devise here to Julia of a fee upon the birth of issue." *Ball* v. *Phelan*, 94 Miss. 337.

Under this statute the devise of a life estate to Mrs. Rambo with remainder over to the issue of her body, and in default of such issue, then to her heirs forever, casts the descent of this property on the failure of issue of her body, and at her death, on her sisters and brothers who, under the statute of descent and distribution in that state, were her heirs.

Learned counsel further states in his brief that because the will under consideration disposed of lands in Mississippi and did not dispose of any property in Tennessee, that the law of the domicile cannot be invoked in interpreting the language used in the will and that the statute of Mississippi abolishing the rule in Shelley's case fixes as the persons who would be the heirs of Mrs. Rambo, as those designated in the statute of descent and distribution of Mississippi, or, in other words, the

contention of learned counsel is that the meaning and intention of the testator in the will under consideration to be controlled and governed by this statute.

It is true that the title to the lands involved is governed and controlled by the laws of the state of Mississippi where the lands are situated, but these laws in no way undertake to control who the owner shall devise the same to by will, and when the statute of Mississippi says that a gift to a person for life with remainder at death to his or her heirs, that the gift to the first taker is limited to a life estate and the title to the heirs is good as to the remainder estate, it does not mean to control the intention of the testator as to who he meant by the word "heirs," and the remainder estate goes to whomsoever he meant by the use of that word, regardless of where the land is situated, or of any other consideration, provided his intention is not prohibited by any statute or settled rule of policy of the state of Mississippi.

Now, therefore, if from the reading of the will, and giving effect to all of the language used by the testator in the same, and from all of which, and from the circumstances surrounding him at the time of the making of the will, it appears that he intended to mean, and did mean, by the use of the word "heirs" those persons who would be his daughters' heir according to the law of his domicile, to-wit: The stauate of descent and distribution of Tennessee, then why is not that intention and purpose as controlling as if it had been expressed Therefore, the position of learned counsel that the statute of Mississippi will control the meaning and intention of a testator in the use of the word "heirs" is utterly untenable because when that meaning and intention is ascertained, it is the controlling law of the will and it does not violate any prohibitive statute of Mississippi, or any settled rule of law of that state.

The authorities cited by learned counsel, to-wit: *Irwin* v. *Newland,* 63 Miss. 192; *Love* v. *Buchanan,* 40 Miss. 758; and *Harvey* v. *Johnson,* 71 So. 826, all expressly hold that the intention of the testator as to what persons were meant by the use of the word "heirs" in a will controls; that the intention of the testator and his meaning, when ascertained, is the controlling factor in the interpretation of a will.

We respectfully submit to this honorable court that it is admitted by learned counsel in the brief we are answering: (a) That under the statute laws of Tennessee a husband is not an heir of his wife except in the case of a total failure of blood relative to the remotest degree. (b) That under the judicial decisions of the state of Tennessee a husband is not an heir of his wife and takes no interest in her real estate except the common-law right of courtesy at her death. (c) Learned counsel does not controvert in his brief our contention as to the meaning and intention of Dr. Dunlap in the use of the word "heirs" in his will. (d) Counsel's contention is that the statute abolishing the rule in Shelley's case in Mississippi fixed who should be the heirs that would take the remainder after the termination of a life estate regardless of the intention and purpose of the testator, and this contention we have undertaken herein to show is utterly untenable under all of the authorities, and we respectfully submit that this intention of Dr. Dunlap should be carried out and consummated by a decree in this case as prayed for in our original brief.

*Lemuel H. Doty,* for appellee.

The will executed by Mrs. Lily M. Rambo has no force whatever. She had only a life interest and could not convey or will the property to any one because the title was only vested in her during her lifetime and by operation of law at her death it became vested in T. D. Rambo,

her husband and heir. Under section 2776, Code of Mississippi 1906, the rule in Shelley's Case has been abolished. Therefore, T. D. Rambo, the defendant, being the only heir of Lily M. Rambo, deceased, he would take as a purchaser under this section.

Under section 1651, Code of 1906 of the state of Mississippi, it is expressly provided that: "Where the wife dies leaving no children or descendants of children, then the husband inherits all property." This section of the Code makes the husband T. D. Rambo, the heir at law and the only one to inherit all the property of Lily M. Rambo, deceased.

We contend that the language used in the will of Newton H. Dunlap is clear and free from any ambiguity, and must be construed as written. Complainants seek to have this court follow certain decisions in the state of Tennessee, dealing with lands in the state of Mississippi governed by the laws of that state.

The principal case cited by counsel for appellants, is the case of *Campbell* v. *Noble,* 19 So. at pages 28 to 38, (Alabama Case). This case has no application whatever to the case at bar. The supreme court of Alabama was construing a will in which the following language was used: "If the said Elizabeth shall have an heir or heirs, in that case, after the death of her father and mother, she shall have the whole of the plantation and house and lot in the town of Tuscumbia, together with the balance of the negroes, she having first to set apart or provide for the genteel support of her sister Josephine during her life. If the said Elizabeth die and leave no heir or heirs of her body, my will is that all of the property she may acquire by this will shall be equally divided between all of my children living, and such grandchildren whose parents may have died; and if she should die and leave an heir or heirs, I give it to them forever."

This language is perfectly plain, and shows it was the intention of the grantor that this property should become the property of the sisters and brothers or the issues of their bodies in case the daughter should die without issue of her body. I therefore submit that the language used in the will sought to be construed in the case at bar, and the language used in the Alabama case is not identical and could not be construed as meaning the same thing. *Grotenkemper* v. *W. H. Carver et al.,* 77 Tenn. 280 to 288, cited by counsel for appellant, does not enlighten the court in the least upon the position assumed by him in his pleadings and in his brief. This case deals with the separate estate of a married woman, and construed by the court according to the language used in the deed.

If Dr. Dunlap intended to exclude the husband of Lily M. Rambo, who was then the wife of the appellee, he would have used language generally used in Tennessee to cut out or exclude the husband from any benefits in and to the property conveyed or devised. Therefore, the case of *Grotenkemper* v. *W. H. Carver et al.,* 77 Tenn. 280 to 288 strengthens the position assumed by the appellees and certainly cannot support the theory adopted by counsel for appellant in his bill of complaint, brief of and argument. This Tennessee case is one of those referred to by Mr. E. B. Klewer in his testimony Rec. pp. 115, 116 and 117.

As to the construction of wills under the laws of Tennessee, see, *Katzenberger* v. *Weaver,* 110 Tenn. 620; *Frank* v. *Frank,* 120 Tenn. 572; *Mayberry* v. *Scruggs,* 135 Tenn. 586 and citations therein. Where the language used in the will is free from ambiguity and clearly expressed the intent of the testator, testimony of any character is not admissable, and no testimony is ever admissible for the purpose of correcting or reforming a will. In the case of *Schlottman* v. *Hoffman,* 73 Miss. 188, 18 So. 893, the court said, Chief Justice COOPER

delivering the opinion: "It is well settled that no court can decree the reformation and correction of a will to make it conform to the purpose and intention of the testator not expressed in the instrument as executed by him; First: Because the testator has passed beyond the jurisdiction of all earthly courts: Second: Because a will is a voluntary conveyance and if the court had jurisdiction of the testator it could not compel him to make a will of any sort; Third: Because the statute or will provides for the devolution of property by will actually made, and not by those parties intend, however definitely to make, but do not make. See *Rhodes* v. *Rhodes,* 7 App. Cas. 198; Schandler Wills, sec. 220; *Ehrman* v. *Hoskins,* 67 Miss. 192, So. 776; 1 Pom. Eq. J., sec. 871; *Bingel* v. *Valz,* Ill. Sup. Ct. 16 L. R. A. 321 and notes (31 N. E. 13).

Wills must be construed from language used by the testator. See *Johnson* v. *Delome Land Co. et al.,* 77 Miss. 15, 26 So. 360. I deem it unnecessary to consume further time of the court by citing the authorities which have been cited by associate counsel in their briefs. From the authorities cited in behalf of the appellee we can see but one conclusion to be reached, and that is an affirmance of the decree of the court below. We therefore most earnestly insist that the conclusion reached by the chancellor is correct; and we ask an affirmance of this case.

*Julian C. Wilson, D. A. Scott* and *E. M. Yerger,* for appellee.

The court asked of counsel, two questions: 1. Should the words used by the testator, be interpreted in accordance with the laws of Tennessee, or in accordance with the laws of Mississippi? 2. Does the word "heir" as used in the statute of any judicial decision of the state of Tennessee, include the husband as an heir of

the wife? Our contentions and answers are:—1. That the words of the testator with reference to the gift to heirs, should be construed in accordance with the laws of the state of Mississippi, although the result would be the same because the word "heir" as construed by the courts of Tennessee, would be the person who inherited the property. 2. The statutes of Tennessee do not include the husband as an heir of the wife where there is some other heir capable of inheriting, but do include the husband where there are no other heirs capable of inheriting. Judicial decisions of the state of Tennessee, include the husband as well as all other persons, as an heir of the wife, where such person inherits the property.

Under the laws of descent and distribution in the state of Tennessee, if the wife has other heirs capable of inheriting, the husband only takes the common-law estate by courtesy in the real estate of his wife, but takes all her personal property in the absence of a will by virtue of his marriage. If this land were in Tennessee, and the wife only had a life estate in it, the husband would have no interest in it but it would go to the brothers and sisters. The word "heirs" in Tennessee is usually construed to mean those persons who would inherit particular property, whether real or personal, the subject of the grant relying wholly upon the laws of descent and distribution as to the particular property.

Therefore, we say that if the court of Tennessee had power to construe this will relating to Mississippi property, the court of Tennessee would construe the word "heirs" to include the husband because he would be the person who would inherit the property in Mississippi although he would not have been an heir had the property been in Tennessee.

Should the words used by the testator be construed in accordance with the laws of Tennessee, or in accordance with the laws of Mississippi? We think the word

used, which is the word ''heirs,'' should be interpreted in accordance with the laws of the state of Mississippi, for two reasons: First: The word ''heirs'' in Tennessee, has not acquired therein a ''fixed and unchangeable meaning thus becoming a rule of property,'' nor has it such a technical meaning that it has been chystallized into a rule of property as is required in *Ball* v. *Phelan,* before the construction of the domicile governs. Second: The Tennessee law does not govern because this case is controlled by Mississippi Statute. The statute abolishing the rule in Shelley's case, which was section 2776 of the Code of 1906, and the same in the Code of 1892, that a deed such as this should be held to create a life estate in Mrs. Rambo with remainder to her heirs, who shall take as purchasers by virtue of the remainder so limited to them. In other words, but for this statute it is perfectly plain that Mrs. Rambo would have taken a life estate with remainder to her issue, and if she had no issue, that this remainder would have been enlarged into a fee by giving to her, the property for and during her natural life, and then to her heirs forever. The enlargement into a fee, would have been by virtue of the rule in Shelley's case. The statute abolishing the rule is a Mississippi statute, and it says that the remainder shall go to her heirs.

The question then is, who are her heirs under the statute? It seems too plain for authority that this is a Mississippi question. 1. The construction of the domicile does not control in a will unless the words used are technical words, which, in the domicile, have been crystallized into a fixed, and unchangeable meaning thus becoming a rule of property. *Ball* v. *Phelan,* 94 Miss. 293.

The supreme court of Mississippi, in *Irvan* v. *Newland,* 63 Miss. 192, holds that the word ''heirs'' used in a will, must be construed in its technical sense unless the will shows clearly that it was used by the testator in a

different sense, and this means that the heirs are the persons who inherit the property under the laws which govern the descent of the property.

The supreme court of Tennessee has not given to the word "heirs" a fixed meaning, such as is required by the court in *Ball* v. *Phelan*, except in so far as that fixed meaning is held to give the property to those who would take it by the laws of descent in the absence of a will, by governing laws of descent and distribution. *Forrest* v. *Porch*, 100 Tenn. 393; *Stewart* v. *Drake*, 1 Higgins (C. C. A.) Tenn. 332; *Alexander* v. *Wallace*, 76 Tenn. 572; *Swanson* v. *Swanson*, 2 Swan. 457.

These cases will be quoted to the court in a later part of this brief, to the effect that under the judicial decisions of the state. of Tennessee, the gift over to the heirs of Mrs. Rambo would be those who, in the absence of a will, would inherit the property by the law of descent and distribution which in this case, would be her husband, the appellee here. Of course, if the word heirs, was construed to mean those who would inherit the property if the property was situated in Tennessee, then it would not be her husband but others.

In that event, the definition of the word "heirs" would not be those persons who would inherit the land under the laws of descent and distribution, as the Tennessee court defines the word "heirs," but would be those who would have inherited the land had the land been situated in Tennessee, which is was not.

The primary meaning of the word "heirs" in Mississippi (and in Tennessee as we shall show) is those persons who take an intestate's estate by the prevailing statutes of descent. *Love* v. *Buchanan*, 40 Miss. 758; *Dunlap* v. *Fant*, 74 Miss. 197; *Harvey* v. *Johnson*, 71 So. 826. So, the construction to be applied to this will is at last the construction of a Mississippi statute of construction abolishing the rule in Shelley's case.

It will not, it seems to us, be an answer to say that the statute abolishing the Rule left it open to say whom the testator meant as heirs, so as to apply the rule to others than heirs. The statute only applied to a will which contained a limitation to real heirs as such, who would otherwise have taken by descent. The rule only applied to real heirs, not supposed heirs, in holding there was a limitation to them by descent. As the rule in Shelley's case only applied to the real heirs who took by descent, the statute only applies to them in giving them an estate by purchase.

1. Does the word heir as used in the statute of Tennessee include the husband as an heir of the wife? If the wife has other heirs, it does not. The husband only takes an estate by the courtesy in the wife's realty in Tennessee. If the wife has no other heirs capable of inheriting, then the husband inherits it. Section 4165 of Shannon's-Thompson's Code of Tennessee.

2. Does the word "heir" as used in the judicial decisions of the state of Tennessee, include the husband as an heir of the wife? The word "heir" in the judicial decisions in Tennessee includes whoever would inherit the particular property under consideration, if its deceased owner had died interstate. It includes next of kin at to personal property and all who inherit as to realty.

It would and does include the husband, whenever the husband would inherit. Ordinarily as to Tennessee realty, it would not include the husband because ordinarily the husband would not inherit the land. In a case where he did or would inherit the land it would include him.

In the case at bar, it would include the husband, as to this Mississippi land because Dr. Rambo would have inherited from his wife had she owned it under the Mississippi statute of descent. Had it been land in Tennessee, the husband would have been excluded under

the Tennessee decisions because he would not have in-
herited the property there had she died intestate and
hence he would not have been her heir. *Forrest* v.
*Proch,* 100 Tenn. 393; *Stewart* v. *Drake,* 1 Higgins,
(Tenn. C. C. A.) 340; *Stewart* v. *Drake,* 1 Higgins 340;
*Alexander* v. *Wallace,* 8 Lea (76 Tenn.) 572; *DeBeau-
rior* v. *DeBeauvior,* 3 Ho. L. Cas. 542, 558; *Gwynne* v. *Mud-
dock,* 14 Ves. 488; *Herrick* v. *Franklin,* L. R. 6 Eq. 594;
In re Steeven's Trusts, L. R. 15 Eq. 110; *Ward* v. *Sanders,*
3 Sneed, 337; *Ingram* v. *Smith,* 1 Head, 412, 426; *Gos-
ling* v. *Caldwell,* 1 Lea 454; *Gittings* v. *McDermott,* 2
M. & K. 69; *Vaux* v. *Henderson,* 1 J. & W. 388n;
*Crown* v. *Henesey,* Hawks 392; *Ferguson* v. *Stewart,*
14 Ohio 140; *Clark* v. *Lynch,* 46 Barb. 68; *Evans* v.
*Godbold,* 6. Rich, Eq. 26; *Morton* v. *Barrett,* 22 Me.
257; *Swanson* v. *Swanson,* 2 Swan. (32 Tenn.) 450, 6
Cr. Dig. 148; 2 Williams on Ex., 926.''

So in Tennessee, an heir means the one who would
have succeeded to the property of an intestate; in this
case, the appellee. So the Tennessee decisions merely
refer back to Mississippi where the definition of the
word is the same.

This statute of descent of realty differs. A husband
inherits Mississippi realty from his wife. A husband
does not inherit Tennessee realty from his wife, but
takes an estate by courtesy.

This is Mississippi realty. Appellee's real position
is that the testator and Captin Woods, his lawyer,
did not know there was a difference in the law of the
two states, but supposed they were the same. It is in-
credible—Captain Woods had lived next to the Missis-
sippi line for years. Every lawyer in the world knows
that the laws of descent differ in different states. He
could have consulted a legal directory such as Hubbell
or Martindale in two minutes, and if in doubt, surely
did so.

Why should the court suppose the testator meant exactly the opposite of what he said? He said he wanted the land to go to Mrs. Rambo's heirs. Why should the court say he wanted it to go to his own heirs, which could have been accomplished by saying "to my heirs forever" instead of "to their heirs forever?"

If this property is given to appellants, it is taken away from Mrs. Rambo's heirs and given to Dr. Dunlap's heirs, we think upon the assumption that both the testator and his lawyer did not mean what they said. It seems to us to override language instead of construing it.

It is not even a will devising property in two states, as in *Ball* v. *Phelan,* where there is much reason in applying the rules of construction of the domicile for uniformity, but where they were not applied.

In conclusion we submit the question is really not open to construction at all, but the mere ascertainment of who was Mrs. Rambo's heir to land in Tunica County, Mississippi. Nothing in the will suggests that the word "heir" had any but its ordinary meaning and that meaning is the same in Tennessee as in Mississippi, although the persons to whom it applies differ according to where the land inherited is situate.

We therefore ask an affirmance.

Smith, C. J., delivered the opinion of the court.

Newton H. Dunlap, a widower, lived and died in Hardeman county, Tenn., and at the time of his death owned among other lands that here in controversy, which is situated in Tunica county, Miss. He left several children surviving him, to whom by his last will and testament he devised his land, that here in question being devised to his daughter, Mrs. Lillie M. Rambo, whose husband then was and still is living. Item 10 of his will is as follows:

"It is further my will and desire that the portions of land above and hereafter bequeathed to my daughters, Anna E. Rose, Minnie M. Dunlap, Adeline Dunlap and Lilly M. Rambo, respectively, shall be held and owned by each for their sole and separate use for and during the term of their natural life and at their death it shall descend to and vest in the issue of their bodies respectively, and if they or either of them have no issue, then to their heirs forever."

The devisees under this will entered into the possession of the property devised to them therein. Mrs. Rambo, who lived in Tennessee, died without issue, leaving a will by which she devised all except a small portion of her property to her husband, T. D. Rambo, the appellee herein, who thereupon entered into the possession of and now claims to own the land here in controversy. The appellants, who are the sisters and brother of Mrs. Rambo and the surviving children of Newton H. Dunlap, exhibited their bill in the court below against the appellee, T. D. Rambo, praying that his claim to the land be canceled, and he be made to account to them for the rents and profits thereof. On final hearing the bill was dismissed.

No interest in the land passed to the appellee under the will of Mrs. Rambo, for the reason that under her father's will she had only a life estate therein.

So that the real question presented to us for consideration is whether or not the appellee is an heir of his wife within the meaning of that clause of Dunlap's will by which he devised the land to Mrs. Rambo's heirs in event she should die without issue. This devise is to a class, the members of which must be determined according to the law of Tennessee, the domicile of the testator, and not by law of Mississippi, although the land devised is situated therein, for the rule is that where the laws of different jurisdictions are involved in the interpretation of a will for the purpose of ascer-

taining the testator's intention as therein expressed, the words used by him therein, in the absence of circumtances indicating that he had the law of another jurisdiction in mind, must be interpreted in accordance with the law of his domicile. *Ball* v. *Phelan,* 94 Miss. 293, 49 So. 956, 23 L. R. A. (N. S.) 895; *Crusoe* v. *Butler,* 36 Miss 150; *Adams* v. *Farley,* 18 So. 390; Story on Conflict of Laws (6 Ed.), p. 642, section 479E, and page 646, section 479H; Minor on Conflict of Laws, sections 12, 145; *Lincoln* v. *Perry,* 149 Mass. 368, 21 N. E. 671, 4 L. R. A. 217; *Brandeis* v. *Atkins,* 204 Mass. 471, 90 N. E. 861, 26 L. R. A. (N. S.) 230; *Jacobs* v. *Whitney,* 205 Mass. 477, 91 N. E. 1009, 18 Ann. Cas. 576; note, 2 L. R. A. (N. S.) 447; *Harris* v. *Ingalls,* 74 N. H. 344, 68 Atl. 34; *Harrison* v. *Nixon,* 9 Pet. 483, 9 L. Ed. 201; 40 Cyc. 1382.

That the devise is not to the heirs of the testator, but to the heirs of a person domiciled in a state other than that in which the testator lived has been held not to indicate that the testator had in mind the law of such person's domicile (*Proctor* v. *Clark,* 154 Mass. 45, 27 N. E. 673, 12 L. R. A. 721), but if the contrary should be the true rule, as to which we are not now called on to express an opinion, the result would be the same here, for Mrs. Rambo, to whose heirs the land was devised, also lived and died in Tennessee.

The devise to the heirs of Mrs. Rambo therefore is to the person or persons appointed by the law of Tennessee to succeed to her real property in event she should die intestate, and those persons are the appellants, her sisters and brother. 4 Ann. Code of Tennessee, section 4163 et seq.

*Reversed and remanded.*