GREENWOOD v. PAGE.

WILKINSON v. PAGE et al.

WAGAR v. SAME.

Nos. 8366–8368.

United States Court of Appeals.
District of Columbia.

Decided Oct. 18, 1943.

Mr. Edmund D. Campbell, of Washington, D. C., with whom Messrs. Richard A. Ford and William E. Carey, Jr., both of Washington, D. C., were on the brief, for appellants Mell R. Wilkinson and Clorinda A. Wagar.

Mr. Lawrence W. Smith, pro hac vice, by special leave of Court, with whom Mr. Delos G. Smith, of Washington, D. C., was on the brief, for Marion W. Page Ross Greenwood, appellant in No. 8366 and appellee in Nos. 8367 and 8368.

Messrs. Charles F. Wilson and Henry B. Weaver, Jr., both of Washington, D. C., for Rufus Lee Page, Jr., appellee in each case.

Before MILLER and EDGERTON, Associate Justices, and EICHER, Chief Justice of the District Court of the United States for the District of Columbia, sitting by designation.

MILLER, Associate Justice.

Humphrey R. Wagar, who resided, and was domiciled, in Michigan, died in 1916. His will, which was executed in 1908, designated trustees to hold and manage his estate, in the name of "H. R. Wagar Estate," until the death of all his children named in the will; whereupon it was to be distributed to his four grandchildren, Portia W. Wagar, H. R. Wagar, Jr., Marion W. Page and Wellington Cass Page. The trust terminated in October, 1939. Wellington Cass Page died in 1915, a year before the death of the testator. The question of this case is what disposition should be made of the share which was designated for him in the will of his grandfather. The answer depends upon the interpretation of the following provisions of the will: "It is my will to have the principal sum of my estate kept together and held intact until the death of the survivor of my children, Fred L. Wagar, Ernest E. Wagar and Nellie W. Peterson; that my wife, children, and grandchildren shall have the rents from my property as herein specified, and that the estate ' with such increased value as shall accumulate thereon by reason of the increase in property and rents, shall go to my grandchildren, Portia W. Wagar, H. R. Wagar, Jr., Marion W. Page, and Wellington Cass Page, at the death of the survivor of my said children, * *. 7th. Subject to the life estate of my beloved wife, and the children above named, I give, devise and bequeath to my grandchildren, Portia W. Wagar, H. R. Wagar, Jr., Marion W. Page and Wellington Cass Page, sons and ·daughters of my said children, all the remainder of my real estate and personal property, and all that may remain thereof and be accumulated by my trustees, whether said property is in the name of Humphrey R. Wagar or H. R. Wagar Estate, or in whatever name it may be held, or wherever situated, to have and to hold the same to themselves, their heirs and assigns forever, and to be divided between them share and share alike. This devise, however, always subject to this condition; that *in case of the death of any of said grandchildren, prior to the time of the decease of the survivor of my children, then and in such case, the share or shares of the said deceased grandchild shall be divided among the legal heirs of said grandchild share and share alike."* [Italics supplied.]

The question is complicated, also, by the following facts: Wellington's mother was Nellie Wagar, a daughter of the testator. She married Rufus Lee Page, and Wellington was one of the children of that marriage. Thereafter Nellie Wagar and Rufus Lee Page were divorced; the latter then married again. A son was born of that marriage, Rufus Lee Page, Jr., who is, consequently, a half brother of Wellington, but not a grandchild of the testator. Part of the property of the estate was located in Michigan, part in Washington, D. C. Upon the testator's death, in 1916, his will was admitted to probate in Michigan. Following a series of trials and appeals the Michigan courts decided that the one-fourth share of the residue of the estate of Humphrey R. Wagar, deceased, which would have gone to Wellington Cass Page had he survived the last of the children of Humphrey R. Wagar, by the terms of the devise contained in the will, goes to and is to be divided among the legal heirs of Wellington Cass Page share and share alike; that the legal heirs of Wellington Cass Page are to be determined as of the date of the death of Ernest E. Wagar, who was the last surviving child of the testator, namely, October 6, 1939; and that the legal heirs of Wellington Cass Page, as of that date, were Marion W. Page Ross Greenwood, a full sister, ·and Rufus Lee Page, Jr., a half brother.[1]

In order to secure distribution of that portion of the residue which was located in Washington, D. C., a suit was filed in the District Court for partition, to remove a cloud upon title, for appointment of a re-

---

[1] In re Wagar's Estate, 292 Mich. 452, 456, 290 N.W. 865, 866; In re Wagar's Estate, 295 Mich. 463, 295 N.W. 227; In re Wagar's Estate, 302 Mich. 243, 4 N.W. 2d 535.

ceiver, and for a declaratory judgment as to the rights of the parties. Following a trial, the District Court decided the principal question as follows: "That the legal heirs of Wellington Cass Page are to be determined as of the date of death of Ernest R. [E.] Wagar, the last life tenant, namely, October 6, 1939; That in accordance with the laws of the District of Columbia as of October 6, 1939, the legal heirs of Wellington Cass Page were his sister Marion W. Page Ross Greenwood and his half brother Rufus Lee Page, and they are therefore entitled to the portion of the estate of the said Humphrey R. Wagar devised to the said Wellington Cass Page in regard to the property in the District of Columbia, one-half (½) each, share and share alike; * *."

From the judgment of the District Court, Mell R. Wilkinson noted an appeal, upon the ground that the devise to the four grandchildren was a class devise, but abandoned it in this court. (No. 8367) Wilkinson and Clorinda A. Wagar joined in attacking the judgment upon the following grounds: (Nos. 8367, 8368) (1) Because of the death of Wellington Cass Page prior to the death of the testator, his share of the estate became intestate property and passed to the heirs-at-law and next-of-kin of the testator; (2) By the terms of the will, all testator's personal estate was to be sold and the proceeds invested in Washington, D. C. real estate; with the result that such personal property must be considered as real estate under the doctrine of equitable conversion and subject to partition in the District. Our decision, as will appear later, makes discussion of the second point academic, for the property will go to the same persons whether distributed as personalty in Michigan or realty in the District of Columbia. Without further commitment, it is sufficient to say that the point is of doubtful merit.[2] Concerning the contention that the death of Wellington Cass Page prior to testator's death caused his share of the estate to become intestate property, the rule is that a valid provision making a specific gift over, in case the first beneficiary dies before the testator, prevents a lapse.[3]

From the judgment of the District Court, Marion W. Page Ross Greenwood appealed, (No. 8366) contending here that Rufus Lee Page, Jr., the half brother, is not entitled to participate in the distribution of the District of Columbia property and that, instead, she is the only heir of Wellington Cass Page. The theory of her contention is that (1) the devolution of title and the determination of heirship are controlled by the laws of the District of Columbia, where the land is situated; (2) the controlling law is that of the District, in force at the time of the testator's death in 1916, from which time the will speaks; (3) in 1916, by the law of the District, half bloods were not heirs when a full blood was living, unless the property came from a common parent; (4) to hold otherwise would violate the intention of the testator who is presumed to have had in mind the law as it stood in his lifetime; (5) the devise to her as substituted devisee became vested upon the testator's death in 1916, and cannot be divested by subsequent legislation; (6) that interpretation of a will is favored which prefers family and kindred over strangers; (7) although the determination of heirship must be made as of the 6th day of October, 1939, such determination can include only those who by the laws of the District of Columbia in force at the time of the testator's death are so related as to be heirs of Wellington Cass Page.

The general rule, applicable in the District of Columbia, is that the law of the situs of real property governs not only its descent, alienation and transfer, but the effect and construction of wills and other conveyances.[4] Consequently, the decisions of the Michigan courts were not res judicata in the present case. On the contrary, jurisdiction to decide it is possessed, exclusively, by the courts of the District.[5]

But, in deciding such a case, the courts of the District must observe, among others, the two following rules: First, that the intent of the testator is paramount in all interpretations of wills;[6] and, second, that in discovering the testator's intent, from words used by him in his will,

[2] See Restatement, Conflict of Laws (1934) § 306, comment f; 2 Beale, Conflict of Laws (1935) § 306.6.

[3] 4 Page, Wills (3d ed. 1941) § 1420; In re Piffard's Estate, 111 N.Y. 410, 18 N.E. 718, 2 L.R.A. 193; Rivers v. Rivers, 36 S.C. 302, 15 S.E. 137.

[4] Noyes v. Parker, 68 App.D.C. 13, 16,

92 F.2d 562, 565; De Vaughn v. Hutchinson, 165 U.S. 566, 17 S.Ct. 461, 41 L.Ed. 827; Olmsted v. Olmsted, 216 U.S. 386, 30 S.Ct. 292, 54 L.Ed. 530, 25 L.R.A.,N.S., 1292.

[5] Noyes v. Parker, 68 App.D.C. 13, 16, 17, 92 F.2d 562, 565, 566.

[6] Noyes v. Parker, 68 App.D.C. 13, 16,

the controlling meanings of such words are, generally, those declared by the law of the testator's domicile.[7] The rationale of this latter rule is that, since the testator is presumed to be most familiar with the law of his domicile and with the language used there, in the absence of controlling circumstances which persuade to the contrary, the meaning which should be ascribed to words which he uses, is the meaning which prevails at the place of his domicile.[8]

■ The vital words which require interpretation in the present case are "the legal heirs of said grandchild," used in the seventh item of testator's will, and particularly the word *heirs.* The law of Michigan—testator's domicile—has so defined the words as to include half bloods, at all times involved here. If, therefore, that definition is controlling, under the rule stated, it is decisive of the case. Some testamentary words, it is true, may express a particular purpose in such technical language as to require that they be given a definite operative effect, without regard to the intention of the testator;[9] and in such instances, when used in the disposition of land, their operative effect is determined by the law of the situs.[10] But even if words are used which sometimes, or usually, are of technical connotation, nevertheless, if they are so used as clearly to indicate that a nontechnical meaning was intended, or if there are explanatory and qualifying expressions from which it appears that the import of the technical language is contrary to the clear and plain intent of the testator, the latter will prevail.[11] Thus, when the word heir is used as one of limitation, it must be given that effect,[12] but the contrary is true if its use in context clearly indicates that it is intended to constitute a disposition by purchase.[13]

■ In the present case the word heirs, as used in the seventh item of testator's will, describes, merely, the class of beneficiaries which is to take—it is obviously a word of purchase. Consequently, the Michigan interpretation must be adopted as expressing the intention of the testator. This being true, appellants' contentions fail and the determination made by the District Court is correct.

Affirmed.

---

92 F.2d 562, 565; Jewell v. Graham, 57 App.D.C. 391, 393, 24 F.2d 257, 259; Baldwin v. National Savings & Trust Co., 65 App.D.C. 174, 176, 81 F.2d 901, 903; Evans v. Ockershausen, 69 App.D.C. 285, 290, 100 F.2d 695, 700, 128 A.L.R. 177, certiorari denied, Smith v. Ockerhausen, 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034.

[7] Rutherfurd v. American Security & Trust Co., 56 App.D.C. 214, 217, 12 F.2d 155, 158.

[8] Restatement, Conflict of Laws (1934) § 251(3); Zombro v. Moffett, 329 Mo. 137, 145, 44 S.W.2d 149, 152; Keith v. Eaton, 58 Kan. 732, 735, 51 P. 271, 273; Rose v. Rambo, 120 Miss. 305, 82 So. 149.

[9] Daniel v. Whartenby, 17 Wall. 639, 84 U.S. 639, 642, 643, 21 L.Ed. 661: "In construing wills, where the question of its application arises, the intention of the testator must be fully carried out, so far as it can be done consistently with the rules of law, but not further. (Hargrave's Law Tracts, 489.) The meaning of this is that if the testator has used technical language, which brings the case within the rule, a declaration, however positive, that the rule shall not apply, or that the estate of the ancestor shall not continue beyond the primary express limitation, or that his heirs shall take by purchase and not by descent, will be unavailing to exclude the rule and cannot affect the result."

[10] Restatement, Conflict of Laws (1934) § 251(1) (2); Jennings v. Jennings, 21 Ohio St. 56; Jackman v. Herrick, 178 Io-wa 1374, 161 N.W. 97; Bovey v. Smith, 1 Vern. 85, 23 Eng.Rep. 328.

[11] Daniel v. Whartenby, 17 Wall. 639, 84 U.S. 639, 643, 21 L.Ed. 661, approved and applied to the District of Columbia in Green v. Green, 23 Wall. 486, 90 U.S. 486, 23 L.Ed. 75, and in De Vaughn v. Hutchinson, 165 U.S. 566, 577, 17 S.Ct. 461, 41 L.Ed. 827.

[12] Thompson, Wills (2d ed. 1936) §§ 265, 268, 271, 351. Cf. Noyes v. Parker, 68 App.D.C. 13, 16, 92 F.2d 562, 565 (children).

[13] Thompson, Wills (2d ed. 1936) § 351; De Vaughn v. Hutchinson, 165 U.S. 566, 578, 17 S.Ct. 461, 465, 41 L.Ed. 827: "In the view that we have taken of the case, we are not called upon to reinforce the reasoning of the cases cited, but we shall add a single observation, in application of Chancellor Kent's statement of an exception to the rule. 4 Kent Comm. (6th Ed.) 221. The word 'heirs,' in order to be a word of limitation, must include all the persons in all generations belonging to the class designated by the law as 'heirs.' But the devise here was to Martha Ann for life, and at her decease to her heirs begotten of her body, and to their heirs and assigns— a restricted class of heirs—and this limitation shows that it was the intention of the testator that Martha Ann's children should become the root of a new succession, and take as purchasers, and not as heirs."