ARCHIBALD H. GRIMKE & another, executors & trustees,
*vs.* ATTORNEY GENERAL & another.

Suffolk.    March 11, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Charity*, Duty as to accumulation of fund, General charitable purpose, Administration
cy pres.

A testatrix by her will left the residue of her estate to establish an industrial home
bearing her name, " where colored children may be taught by actual practice in
everything which in the opinion of my trustees, will tend to make home really
comfortable, attractive and happy.    My desire being that my property shall go
to and for the use and benefit of colored people and none other." Upon a bill
by the trustees under the will for instructions, it appeared that the value of the
property which passed under this clause was $32,000, that this was not at the
time of the filing of the bill sufficient to establish and maintain an industrial
home for colored children as directed by the will, and that it was altogether
problematical and uncertain how much money would be required and how long
it would take to accumulate the funds necessary for the purpose specified.  *Held*,
following *Ely* v. *Attorney General*, 202 Mass. 545, that " the trustees should not
be instructed to hold the fund for accumulation, in the hope that some time, in
the more or less distant future, they would be able to carry out literally the pur-
pose of the testatrix, which evidently was intended to be executed in a short
time after her death."

A testatrix by her will left the residue of her estate to establish an industrial home
bearing her name, " where colored children may be taught by actual practice in
everything which in the opinion of my trustees, will tend to make home really
comfortable, attractive and happy.    My desire being that my property shall go
to and for the use and benefit of colored people and none other." Preceding this
clause was an explanatory clause declaring that the testatrix several years be-
fore had bequeathed her property to a certain missionary society, " in order that
young colored men might be educated.    But there is so much spent for salaries
and for elegant offices, comforts and luxuries for the officers in that institution,
that I am disappointed.    Therefore I make this change in order that the friends
of colored persons may be my trustees believing that at my decease my plans
may be more fully carried out to the end that the colored people by being as-
sisted may become intelligent, industrious and thrifty citizens." Upon a bill in
equity by the trustees under the will for instructions, it appeared that the
value of the property which passed under the residuary clause was not sufficient
to establish and maintain an industrial home for colored children as directed by
the will, and that the circumstances were such that it was not the duty of the
trustees to hold the fund for accumulation.    *Held*, that the will contained plain
indications of a general charitable intent in reference to the colored people
and particularly in reference to the education and training of colored children,
and that the object of the testatrix was not limited to the establishment of a
specific institution to be called by her name ; therefore, that a scheme should
be framed for the administration of the fund in accordance with the general in-
tent of the testatrix which should accomplish her purpose as nearly as might be.

KNOWLTON, C. J.   On June 18, 1895, Emmeline Cushing of Boston died, leaving a will containing a residuary clause which bequeaths and devises her property to trustees for the purposes expressed therein, as follows: "I have long entertained a desire of assisting colored people of my country who have been oppressed and down-trodden in the past, and are now unjustly treated, kept back and hindered in the race of life because of a cruel prejudice against them.   Ever since my earliest recollection I have been interested in the welfare of colored people, and have felt that they had not had justice done them, and that in all benevolent operations the white man is the favored one, and receives by far the largest share of the bounty bestowed therefore I have not been governed or influenced in the least by any one, but have acted entirely as my conscience dictated in making this devise in trust.   Several years ago I bequeathed my property to the Home Missionary Society in order that young colored men might be educated.   But there is so much spent for salaries and for elegant offices, comforts and luxuries for the officers in that institution, that I am disappointed.   Therefore I make this change in order that the friends of colored persons may be my trustees believing that at my decease my plans may be more fully carried out to the end that the colored people by being assisted may become intelligent, industrious and thrifty citizens.

"My desire is that the residue of my estate shall be used in establishing what shall be known as the Cushing Industrial Home, where colored children may be taught by actual practice in everything which in the opinion of my trustees, will tend to make home really comfortable, attractive and happy.   My desire being that my property shall go to and for the use and benefit of colored people and none other, and in no event shall any portion of my property be applied to the use or benefit of Roman Catholics, or the support of any Roman Catholic institution."   The value of the property that passed under this clause is $32,000. It appears that this is not at present sufficient to establish and maintain an industrial home for colored children as directed by the will, and that it is altogether problematical and uncertain how much money would be required, and how long it would take to accumulate the necessary funds for that purpose.   The

trustees bring this bill for instructions as to the disposition that should be made of the trust fund.*

The case presents three questions : First, shall the property be held until, by reason of accumulations, it has become sufficient to carry out the provisions of the will in accordance with its terms? Second, shall the property be administered according to the doctrine of *cy pres?* Third, shall the fund be paid over to the heir at law on the ground that the gift has failed?

In reference to the first question, the facts are almost identical with those of *Ely* v. *Attorney General,* 202 Mass. 545. The amount in the hands of the trustees in that case was a little more than the trustees have in the present case, and the finding as to accumulation was in the exact words to which the parties have agreed as a statement of the facts in the present case. The court said in the opinion that " upon this finding, taken in connection with the other facts disclosed, . . . the trustees should not be instructed to hold the fund for accumulation, in the hope that some time, in the more or less distant future, they would be able to carry out literally the purpose of the testatrix, which evidently was intended to be executed in a short time after her death." This language is equally applicable to the present case.

The next question is whether the gift has failed altogether, or whether it should be administered in accordance with the doctrine of *cy pres.* This depends upon whether the language of the will indicates a general charitable intent, to be carried out for the benefit of young persons of the colored race, and particularly by giving them opportunities to obtain an industrial education, or whether the object of the testatrix was limited to a specific charity, which could only be administered by the establishment of a new institution, to be called the Cushing Industrial Home. We think the will contains very plain indications of a general charitable intent in reference to colored people, and particularly in reference to the education and training of colored children. The first of the two paragraphs quoted above is of a

---

* The case came on to be heard by *Loring,* J., who reserved it upon the bill and answers and an agreement as to certain facts for determination by the full court.

very general character, showing that the testatrix had in mind the improvement of persons of African descent, " to the end that the colored people by being assisted may become intelligent, industrious and thrifty citizens." She changed her previous bequest to the Home Missionary Society for a particular reason applicable to that society alone. That bequest and the reason for changing it indicate that her real purpose was the education of young colored persons.

The last of the two quoted paragraphs, after stating her desire specifically, states in the broadest way her general purpose to have her property " go to and for the use and benefit of colored people and none other." The prohibition of the use of it for the " support of any Roman Catholic institution " is an indication that she thought of the possibility of a failure to establish and maintain the Cushing Industrial Home, and of its use for the support of some other institution. Her prohibition was only of the support of a Roman Catholic institution.

We are of opinion that a scheme should be framed for the use of this fund in accordance with the general intent of the testatrix, that shall accomplish her purpose as nearly as may be. For similar cases see *Ely* v. *Attorney General,* 202 Mass. 545; *Weeks* v. *Hobson,* 150 Mass. 377; *Richardson* v. *Mullery,* 200 Mass. 247; *Attorney General* v. *Briggs,* 164 Mass. 561; *Sears* v. *Chapman,* 158 Mass. 400.

*So ordered.*

*D. Malone,* Attorney General, *&amp; F. T. Field,* Assistant Attorney General, for the Attorney General.

*A. L. Taylor,* for the defendant Cowles.