COLLECTOR OF TAXES OF NORTON *vs.* CHARLES T. OLDFIELD & others, trustees.

Bristol.   October 26, 1914. — November 25, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Charity.   Trust,* Charitable.   *Tax,* Exemption.   *Municipal Corporations,* Officers and agents.

A fund, given to a town and held in trust by its officers to apply its income partly to the care and adornment of a public cemetery situated in and belonging to the town and partly to the general expenses of the town, constitutes a valid public charitable trust.

In the case of a public charitable trust a provision for an accumulation of income is good, unless it is carried beyond the limits of a sound public policy.

Where a fund is given to a town in trust with provisions for the payment, after the fund reaches a certain amount, of specified sums for the care and adornment of a public cemetery in and belonging to the town and for the town's

general expenses, and with further provisions for an accumulation of income, the whole trust will remain good if the provision for accumulation is valid, and, if that provision is invalid, it will be disregarded and the whole income will be applied either to the particular charities prescribed by the creator of the trust or to similar charitable purposes under the doctrine of *cy pres;* and such a fund therefore in either event is not liable to taxation.

In regard to exemptions from taxation, it is immaterial that a fund given to a town for public charitable purposes is held and administered by the officers of the town as trustees.

CONTRACT for $1,510, taxes assessed for the years 1912 and 1913 against the defendants as trustees of the Hicks Reserve Fund. Writ dated February 16, 1914.

In the Superior Court the case was heard upon an agreed statement of facts by *Hall,* J. Material facts were as follows:

The Hicks Reserve Fund is a fund created in 1883 by one Cyrus Hicks, who then gave to the town of Norton, subject to the terms of the declaration of trust hereinafter set out so far as they applied to the Hicks Reserve Fund, a small sum of money to be accumulated until the income from the principal sum reached $5,000, at which time $100 from the income was to be used by the town for its general expenses and $100 was to be used in the care and adornment of the Centre Cemetery in Norton, a public cemetery which was owned by the town and in which residents of the town had lots free. When Cyrus Hicks died in 1889, the executors of his will paid over to the trustees the sum of $11,318.70 as a residuary legacy.

The declaration of trust was as follows:

"Trust fund from Cyrus Hicks to the town of Norton transferred to the town June 30, 1883.

"Whereas by an Act of the General Court of the Commonwealth of Massachusetts passed in the year 1883, the town of Norton is authorized to receive from Cyrus Hicks of Boston, in the said Commonwealth, the sum of four thousand dollars, to be forever held in trust for the purpose therein named, namely, to use one-half of the income of said sum for the purpose of keeping in repair the burial lot of said Hicks in said town,. and the other half to be used for ordinary town expenses, and whereas, said Hicks on the thirtieth day of June, A.D. 1883, has delivered said sum of four thousand dollars in bonds to the town of Danville, State of Illinois, to the board of selectmen of said town,

and whereas said board of selectmen are desirous of ascertaining the wishes and intention of said Hicks in relation to the management and disposition of said one-half of said income which is to be used for the care of said burial lot. Now, therefore, I, the said Cyrus Hicks, herein declare that my intention in creating said trust is that said town of Norton shall hold said sum of four thousand dollars in perpetual trust and shall keep the same well and securely invested, and that the same shall be known as the Hicks Trust Fund, and that the income shall be used as expressed in the Act of the General Court above referred to, and as it is my belief that one-half of the income from said fund will not be required for the care of said burial lot it is my desire and request that the portion and sum not so required for the first year, shall be set apart and kept separate from the trust fund above mentioned, and shall be known as the Hicks Reserve Fund, and said portion of the income of the Hicks Trust Fund remaining unexpended at the end of each year shall be added to the Hicks Reserve Fund constituting the principal thereof, which principal with its accumulations in the manner above stated is to be forever held in trust and never be disturbed. When the income of said reserve fund amounts to the sum of five thousand dollars annually then one hundred dollars from said income shall be paid to the same town, and one hundred dollars shall be used for the adornment of my said cemetery lot and for the care and adornment of the whole cemetery aforesaid. When the annual income of said reserve fund amounts to ten thousand dollars, two hundred dollars thereof shall be paid to said town and two hundred dollars thereof shall be applied to the care of said lot, as stated above, and the town shall receive from the income of said reserve fund one hundred dollars for each additional increase of income of five thousand dollars and the same amount to the cemetery annually until the income reached the sum of one hundred thousand dollars annually at which time the sum of twenty thousand dollars from said annual income shall be paid to said town and three thousand dollars shall be annually expended for the care and adornment of the whole cemetery, and a good trusty man must be employed there by the year. When the income is two hundred thousand dollars — five thousand dollars to the cemetery annually, and to every hundred thousand

of income the town shall be paid twenty thousand. When
anything gives out on my cemetery lot it must be replaced with
as good or better than the old, the Monument, Curbing, the
Pump, the Tool House must be kept in the best of repair, the
Vases must be painted once a year and filled with flowers in the
season of them. Father Woods' lot across the drive way the
grass must be cut, the Iron Fence kept painted out of the fund
that I have set apart for my lot.

Boston, June, 30, 1883.  Cyrus Hicks."

In accordance with the provisions of the trust the various
selectmen and town treasurers who have been in office since
1883 have had sole care and custody of the fund and have in-
vested it and reinvested it so that at the time of the hearing it
amounted to about $50,000.

By St. 1883, c. 246, as amended by St. 1884, c. 139, the Leg-
islature authorized the town to accept the gift as provided in
the declaration of trust and afterwards by St. 1890, c. 349,
authorized the town to receive the residuary bequest under the
will of Hicks. The original bequest and residuary legacy were
accepted by the town at town meetings.

The judge found and ordered judgment for the defendant.
The plaintiff appealed.

The case was submitted on briefs.

*P. H. Reilly,* for the plaintiff.

*A. R. White, 2nd,* for the defendants.

SHELDON, J. Subject to the provisions for accumulation,
this fund is held in trust to apply the income, partly to the
care and adornment of a public cemetery situated in the town
of Norton and being the property of that town, and partly to
the general expenses of that town. These are proper objects of
a public charitable trust. *Jackson* v. *Phillips,* 14 Allen, 539,
552, 556. *Burbank* v. *Burbank,* 152 Mass. 254, 256. *Morse* v.
*Natick,* 176 Mass. 510, 513. *Mitford* v. *Reynolds,* 1 Phil. 185.
*Nightingale* v. *Goulburn,* 5 Hare, 484. *Attorney General* v. *Lons-
dale,* 1 Sim. 105.

A provision for accumulation, unless it is carried beyond the
limits of a sound public policy, is good in the case of a public
charitable trust. *Hawes Place Congregational Society* v. *Trustees*

*of Hawes Fund,* 5 Cush. 454, 458. *Odell* v. *Odell,* 10 Allen, 1. *Codman* v. *Brigham,* 187 Mass. 309.

In this case, if the provision for accumulation is valid, the whole trust remains good; if that provision is invalid, it will be disregarded, and the whole of the income will be applied either to the particular charities prescribed by the creator of the trust, or to similar charitable purposes under the *cy pres* doctrine. *Ely* v. *Attorney General,* 202 Mass. 545. *Grimke* v. *Attorney General,* 206 Mass. 49. *Norris* v. *Loomis,* 215 Mass. 344. In either event it is difficult to say that the fund is liable to taxation.

This fund is held by officers of the town for public charitable purposes going directly to the benefit of the town, and, in so far as so applied, relieving its inhabitants from the burden of taxation. This comes within the principles of *Williston Seminary* v. *County Commissioners,* 147 Mass. 427; *Essex* v. *Brooks,* 164 Mass. 79; *Burr* v. *Boston,* 208 Mass. 537; and *Massachusetts General Hospital* v. *Boston,* 212 Mass. 20.

It is upon a like principle that the property of a public or *quasi* public corporation, appropriated to public use, is exempt from taxation. *Milford Water Co.* v. *Hopkinton,* 192 Mass. 491, and cases cited.

That the fund is held by the officers of the town as trustees, and not directly by the town itself, is not material. *Watson* v. *Boston,* 209 Mass. 18. *Little* v. *Newburyport,* 210 Mass. 414, 418.

The judgment for the defendants was ordered rightly, and must be affirmed.

*So ordered.*