**FAY, United States Attorney v. HUNSTER.**

No. 10188.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 20, 1950.

Decided March 20, 1950.

Mr. L. Clark Ewing, Assistant United States Attorney, Washington, D. C., with whom Messrs. George Morris Fay, United States Attorney, and Joseph M. Howard, Assistant United States Attorney, Washington, D. C., were on the brief, for appellant.

Mr. George E. C. Hayes, Washington, D. C., for appellee.

Before WILBUR K. MILLER, PRETTYMAN and PROCTOR, Circuit Judges.

PROCTOR, Circuit Judge.

This case involves judicial *cy pres*. Salvadora Elizabeth Smith died leaving a will devising a house to Lottie Carpenter and the residue of her estate in trust to pay the income to her brother during his life. Then upon his death (which has occurred) the trustee was directed to sell and convert the real estate into cash and to "pay over all of the estate so accumulated to the Pastor of the Holy Redeemer Catholic Church, * * * on condition that the said Pastor

shall use the total estate so bequeathed to him to purchase a suitable home for aged colored people of the District of Columbia, or to the (sic) use so much of said fund as in his discretion will purchase a suitable home for such purpose and to use the balance of said fund, if any, after said purchase, to maintain and support said home." Concededly the residue is insufficient to carry out the testamentary scheme. For that reason the pastor and church declined to act. As a result appellant sought application of the fund *cy pres* to some local charitable institution which cares for aged colored persons. Three such institutions were suggested for the court's consideration. The proposal was successfully opposed by appellee, testatrix' cousin and sole heir. The court was of opinion that the dominant purpose of testatrix was not the care of aged colored persons but the establishment of a home for them *in addition to any then existing*. In support of this construction, the court reasoned that had testatrix "felt that her wishes would be accomplished by the contribution of the funds to any of the institutions existing at the time of her death, clearly she would have provided for such contribution to such institution." Accordingly it was held that the charitable trust had failed, and that the residue of the estate should be distributed as in case of intestacy. D.C., 80 F.Supp. 729. We cannot accept this conclusion or the reasoning upon which it is based.

■ Manifestly the testatrix did desire the charity to be administered according to her chosen plan. But it does not follow that the plan, rather than the charity, was her controlling influence. We cannot surmise what she would have done had she known that a home could not be established as she planned—that would be mere guesswork. But we can, and must, determine what was her dominant purpose. If it was the acquisition of a home conducted by the pastor, the trust has failed. If it was the care of aged colored people, the court will not allow a failure. It will find a way to effectuate the general charitable intent *as nearly as may be* with the donor's wishes. The particular mode will, of necessity, depend upon circumstances.

■ The fact that testatrix laid down her own plan, in preference to donating the fund to a local institution to care for the objects of her charity, is not controlling, even assuming, as the trial court did, that she knew of institutions devoted to such charitable work. At most it only indicates a preference—a first choice, rather than opposition or prejudice towards any institution. Whether testatrix' plan was the result of fancy or belief that her wishes could not be fully accomplished through any existing institution seems to us immaterial, for she had the right to prescribe any plan she wished. That is what she did. Now that her plan has failed, the charitable purpose, if that was her dominant objective, must be rescued, through *cy pres,* from a total failure. Obviously, with the fund insufficient to establish a separate home, a parallel plan cannot be chosen. Another mode must be found. If the only practical way be to turn the fund over to a going institution, then that will fulfill the object of judicial *cy pres.*

■■ We have no doubt that testatrix' dominant purpose was to provide care for aged colored persons in the District of Columbia. Certainly that inference may be as fairly drawn as any other. We think it is fully justified by the terms of the will itself, without drawing support from the enlightened rule that charitable uses are favored by courts of equity, and the construction of all instruments where they are concerned is liberal in their behalf. Ould v. Washington Hospital for Foundlings, 1877, 95 U.S. 303, 313, 24 L.Ed. 450; Noel v. Olds, 1943, 78 U.S.App.D.C. 155, 138 F. 2d 581, 584. Here the dominant purpose is purely charitable, free from the taint of any vain or selfish motive. It should not fail because the particular mode desired by the testatrix cannot prevail. The charitable intent must be given effect.

■ In construing a will little aid can be gained from decided cases, for no two wills are altogether alike and the circumstances attending their making usually differ. However, the facts in Grimke v. Malone, 1910, 206 Mass. 49, 91 N.E. 899, and Citizens & Manufacturers Nat. Bank v. Guilbert, 1936, 121 Conn. 520, 186 A. 564,

are quite similar to the present case and lend support to our ruling here. See also Shoemaker v. American Security & Trust Co., 1947, 82 U.S.App.D.C. 270, 163 F.2d 585; Stead v. American Security & Trust Co., 1949, 84 U.S.App.D.C. 358, 173 F.2d 650.

Holding, as we do, that the charitable trust should be applied according to the principles of judicial *cy pres* we must reverse the judgment with directions to apply the trust fund in the best available way to carry out, as nearly as possible, the dominant purpose of the testatrix to care for aged colored people in the District of Columbia.

■ The only other question concerns the amount of a cash fund which the court found to be income from the residuary estate accumulated during the lifetime of testatrix' brother and payable to his personal representative. The correct amount should be ascertained and paid accordingly. Remaining cash, if any, would be part of the residuary estate for benefit of the charitable trust.

Reversed and remanded for further proceedings in accordance with this opinion.