**WACHOVIA BANK AND TRUST COMPANY, N.A., Trustee Under the Last Will and Testament of John W. Turrentine, et al., Plaintiffs,**

**v.**

**Anna M. BUCHANAN et al., Defendants.**

**Civ. A. No. 112–71.**

United States District Court,
District of Columbia.

June 30, 1972.

Ward E. Lattin, Washington, D. C., for plaintiffs.

L. Paul Byrne, Richmond, Va., for defendants Buchanan and others.

C. Francis Murphy, Corporation Counsel, Washington, D. C., for defendant-intervenor.

Robert Morgan, Atty. Gen., for State of North Carolina, N. C. Department of Justice, Raleigh, N. C., amicus curiae.

Kent D. Thorup, Washington, D. C., for Charles Carroll.

## MEMORANDUM OPINION

PARKER, District Judge.

In these proceedings the trustee under a testamentary trust and the executor under the will seek construction of certain provisions of the trust instrument and instructions as to whether the trustee may administer the trust without reference to racial instructions imposed by the settlor. The trust provided scholarships in the form of grants and loans to "white boys and girls" attending the University of North Carolina.

The matter was heard on plaintiffs' motion for summary judgment construing the will. The issues presented to the Court for determination are whether under the facts of this case the Court should invoke the doctrines of *cy pres* or deviation, upholding the trust by striking certain illegal racial restrictions from the instrument without violating the testator's general charitable intent or whether the trust should fail and the testator held to have died intestate as to his residuary estate. Plaintiffs urge that the Court should strike the illegal racial restriction from the provisions of the trust by invoking those doctrines. On the other hand the defendants contend that this is a proper case for consideration of extrinsic evidence to show that the testator's general intent was such as to preclude application of the *cy pres* doctrine or deviation. Also, they contend that even if extrinsic evidence is inappropriate the will itself fails to manifest any general charitable intent; that the *illegality* of the trust provision *existed at the time* it was executed and as a conse-

quence the trust fails. Finally, they argue that the plaintiffs are violating the *in terrorem* clause of the will by seeking an elimination of the illegal racial proscriptions. They seek judgment dismissing the complaint and declaring that the trust fails and reverts to the heirs at law and next of kin of the testator.

After a review of the trust instrument, the pleadings and other memoranda of the parties the Court concludes that a general charitable intent is found in the trust instrument and that there is adequate justification for granting to plaintiffs the requested relief.

Plaintiffs are the Wachovia Bank and Trust Company, trustee, of the State of North Carolina and Fred W. Morrison, executor under the Will of John W. Turrentine. The testator died in 1966. His will, dated September 13, 1960, was admitted to probate immediately following his death and thereafter letters testamentary were issued to Mr. Morrison. The named defendants are nephews and nieces of the decedent, his sole heirs at law and next of kin. However, all of the defendants have not appeared to contest the relief sought by the plaintiffs. The District of Columbia sought, and was granted, leave to intervene as a defendant.[1] The Attorney General of North Carolina, as Attorney General of the State and supervisor of charitable trusts for the State, was granted leave by the Court to participate as *amicus curiae*.

By the terms of the residuary clause of the will, the testator left the great bulk of his estate to the Wachovia Bank and Trust Company, in trust, with the income therefrom to be used to provide ". . . scholarships in the form of grants and loans at the Consolidated University of North Carolina . . . to white boys and girls who reside in Alamance County . . . whose ambition and desire it is to attend said University but who would not be financially able to do so without such grant or loan."[2] The awardees of the scholarships were to be selected by a committee appointed by an Administrative Group comprised principally of persons holding elective or appointed public positions including the President and three Chancellors of the Consolidated University of North Carolina, the President of the Burlington City Board of Education, the Superintendent of Schools of the City of Burlington, North Carolina, and the Superintendent of Schools of Alamance County, North Carolina. Also included was a representative of the Wachovia Bank and Trust Company and during his lifetime, the executor of the will.[3]

The parties are in agreement and the case law is in accord that the Fourteenth Amendment precludes the public officials of North Carolina from administering this trust on a discriminatory basis. Pennsylvania v. Board of Directors, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Nor would the substitution of persons from the private sector for the

1. The District of Columbia was later granted leave to withdraw on November 19, 1971.

2. Last Will and Testament of John William Turrentine, paragraph IV(b).

3. *Id.*, paragraph IV(b)(3). With the exception of the representative of the Wachovia Bank and the executor the administrative group includes public officials. The Consolidated University of North Carolina is an instrumentality of higher education in the State of North Carolina. Its President and Chancellors are appointed by the trustees of the University who are elected by the General Assembly of North Carolina. Such trus-

tees are considered commissioners of public charities. Members of county boards of education may be appointed by the General Asssembly or elected through popular vote in the respective county. The county board of education appoints and removes the county superintendent of schools. City boards of education are generally determined by popular elections and the superintendents of city schools are appointed and removed by city boards of education. General Statutes of North Carolina § 115–1 et seq. (particularly §§ 115–18, 19, 21, 44) § 116–1 et seq. (particularly §§ 116–1, 116–4, 116–7) (1968).

public officials satisfy the constitutional requirements. Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966). The plaintiffs therefore urge that the doctrine of *cy pres* or deviation be invoked allowing the trustees to administer the trust and provide scholarships to students, otherwise qualified, without regard to racial restrictions.

In the Restatement the doctrine of *cy pres* is stated:

If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which falls within the general charitable intention of the settlor.[4]

This rule is well-settled in the District of Columbia and has often been applied to preserve charitable dispositions which otherwise would have failed. Fay v. Hunster, 86 U.S.App.D.C. 224, 181 F.2d 289 (1950); Shoemaker et al. v. American Security & Trust Co. et al., 82 U.S. App.D.C. 270, 163 F.2d 585 (1947); Noel v. Olds, 78 U.S.App.D.C. 155, 138 F.2d 581 (1943).

■ A review of several provisions of the trust instrument reflect clearly the dominant general charitable intent of Mr. Turrentine. After providing for scholarship grants and loans in paragraph IV (b) (1), in a later paragraph, IV (b) (6), he provides a more detailed statement.

It is my purpose and desire that in awarding scholarships consideration be given only to applicants whose financial status would not permit them to attend the Consolidated University of North Carolina without said scholarships, the *purpose of this Foundation being to make the splendid facilities of said University available to a larger percentage of ambitious young people who otherwise would be deprived of these advantages because of financial limitations, and to whom these scholarships would be the deciding factor as to whether or not they can enter the said University* . . . . (emphasis added)

In Worcester County Trust Co. v. Grand Knight, 325 Mass. 748, 92 N.E.2d 579, 582 (1950) a settlor's purpose was declared as ". . . to encourage the literary and elocutionary efforts of students . . . ." That declaration of purpose, far less descriptive than that of Mr. Turrentine's was regarded sufficient to show "an expressed general charitable intent."

■ Also, the fact that all of Mr. Turrentine's residuary estate was given for collegiate scholarships is a further indication of a dominant charitable intent. Moreover, the trust instrument contains no provision for a gift over or reverter on failure of the charitable trust, but does contain an *in terrorem* clause against the contest of the will by his relatives. *See* Bogert, The Law of Trusts and Trustees (2d ed. 1964) § 437, p. 426, n. 33 and cases cited; Rogers v. Attorney General, 347 Mass. 126, 196 N.E.2d 855, at 861 (1964). Nor does it appear that Mr. Turrentine intended to leave any portion of his estate to his nephews who were not named as beneficiaries. Should the trust fail, the nephews, who were never the subject of his considerations *together with the nieces* would receive windfall benefits never intended.[5] In viewing the will and trust instrument the Court considers all of its provisions to perceive an underlying intent. And where relatives are excluded from a will and specific bequests are made to certain persons in a will creating a charitable trust there is a strong presumption that the settlor did not desire that they have more. *See* Noel v. Olds, *supra*; Citizens

---

4. Restatement of the Law of Trusts, Second, § 399 (1959).

5. *Cf.* Pace v. Bradley, 84 U.S.App.D.C. 212, 171 F.2d 350 (1948).

& Manufacturers National Bank v. Guilbert, 121 Conn. 520, 186 A. 564, at 567 (1936). If possible, testamentary instruments should be interpreted to avoid intestacy and settlor's inclusion of a general residuary clause shows an intent to avoid such. *Guilbert, supra.* Finally, the language in paragraph IV (a) of the Turrentine will that the residuary estate "be allowed as a deduction" for charitable purposes under the estate tax provisions of the Internal Revenue Code may indeed be regarded as another clear manifestation of a general charitable intent.

█ Not only does this case present an opportunity for application of *cy pres* but the doctrine of deviation is equally as applicable. In his discussion of the doctrine *Bogert* refers to it as the inherent power of a court ". . . permitting the trustee to change, the methods of administration set forth in the trust instrument, when this is deemed necessary or highly desirable in order to enable the trustee to perform the trust." Bogert, The Law of Trusts and Trustees, (2d ed. 1964) § 394, p. 236. The Restatement, in referring to this power of the court, states:

> The court will direct or permit the trustee of a charitable trust to deviate from a term of the trust if it appears to the court that compliance is impossible or illegal, or that owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust.[6]

The doctrine of deviation has been freely followed in a variety of situations. Wilbur v. University of Vermont, 270 A.2d 889 (Vt.1970); In Re Will of Potter, 275 A.2d 574 (Del.Ch.1970); Bank of Delaware v. Buckson, 255 A.2d 710 (Del.Ch.1969); Wooten v. Fitz-Gerald, 440 S.W.2d 719 (Tex.Civ.App.1969); Coffee v. William Marsh Rice University, 408 S.W.2d 269 (Tex.Civ.App.1966); Howard Savings Institute of Newark v. Peep, 34 N.J. 494, 170 A.2d 39 (1961);

In Re Sterne's Estate, 147 Misc. 59, 263 N.Y.S. 304 (1933).

In Wilbur v. University of Vermont, the Supreme Court of Vermont held that a trustee might deviate from the terms of the trust imposing limitations on student enrollment even though the testator expressed the desire to keep a college created by a charitable trust limited to an enrollment of 1,000 each year. The court held that a limited enrollment was subordinate to the settlor's general charitable intent, to aid students. Absent any indication that an unlimited enrollment would result in failure of the trust, the court had the power to grant deviation which was consistent with the donor's dominant purpose, namely, that of aiding students from Vermont who otherwise qualified.

In *Buckson*, a testamentary trust was created establishing scholarships for the benefit of young white men residing in Wilmington, Delaware. The trustee was to appoint a committee to award the scholarship which included certain public officials. The court held that the Fourteenth Amendment precluded the trustee from rejecting non-white applicants and ordered removal of the racial restriction and invoked the deviation doctrine.

The Texas court in *William Marsh Rice University*, quoting liberally from *Bogert*, exercised its general equitable power and authorized the trustees to deviate in the administration of a trust so as to accept qualified student applicants without regard to race or color. The trust instrument of the settlor had created an endowment fund to be used for the instruction of white inhabitants of Texas through the establishment of a liberal arts college. The requirements for admission were to be left to the discretion of the board of trustees but instruction was to be non-sectarian, nonpartisan and tuition free. Several years later the Texas court was confronted with a similar situation in Wooten v. Fitz-Gerald where the testatrix directed that her residence be used as a home for

6. Restatement of the Law of Trusts, Second, § 381 (1959).

aged white men in memory of her deceased husband. In holding that the bequest was enforceable as a charitable trust and not an attempt to create a memorial the court employed its equitable powers and struck the word "white" and declared, ". . . we believe the [trial] court was within its equitable powers in deleting the word 'white' from the trust. . . ." (440 S.W.2d at 725).

Defendants press the argument that neither *cy pres* nor deviation are applicable because the doctrines are limited to situations where conditions have changed. Such requirements, however, are unnecessary. The doctrines are applicable even through the particular purpose fails at the outset.[7]

One of the main contentions of the next of kin is that extrinsic evidence should be considered to explain the circumstances under which the will of the testator was drafted and executed. The decisions of this Circuit, however, are to the contrary. In Noel v. Olds, 78 U.S. App.D.C. 155, 138 F.2d 581 (1943) the Court in applying the *cy pres* doctrine, reached the conclusion that a general charitable intent was found only upon a consideration of the terms of the testator's will. And later in a proceeding involving the same trust instrument, Olds v. Rollins College, 84 U.S.App.D.C. 299, 173 F.2d 639 (1948) in commenting on the possibility of considering extrinsic evidence to demonstrate the testator's intent the Court observed that such ". . . would . . . give testamentary effect to nontestamentary expressions, which we are neither permitted nor prepared to do." 84 U.S.App.D.C. at 304, 173 F.2d at 644. Other decisions of our Circuit Court, Fay v. Hunster, 86 U.S.App.D.C. 224, 181 F.2d 289 (1950); Shoemaker v. American Security and Trust Co., 82 U.S.App.D.C. 270, 163 F.2d

585 (1947) do not reflect a departure from such holdings.

Nor does the Court find persuasive the defendants' argument that the illegality of the racial restriction existed at the time of execution of the will, thus, the trust fails. Assuming, arguendo, that the trust provision was illegal when drafted and executed in 1960, it does not necessarily follow that the trust failed *in toto* and reverted to the heirs and next of kin. First, by use of the equitable doctrines of deviation and *cy pres* the trust can be salvaged as discussed above. Second, the entire trust is not illegal. It is just the racial restriction. This may be analogized to a deed with a restrictive racial covenant. The deed is still a viable document. The restrictive covenant is unenforceable and may be repudiated by the filing of a corrective deed.[8] Similarly, the administration of a trust with a racially restrictive provision is illegal but such illegality need not be fatal. In addition to the above reasons, this Court feels that there are sufficient differences between the facts in Pennsylvania v. Board of Directors, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957) and those in this case to conclude that the earlier decision would not necessarily mean that this trust provision was illegal *per se* in 1960. While *Board of Directors* supports the position that *state action* involved in the administration of a trust with racial restrictions violates the Fourteenth Amendment, further clarification was needed to discuss which type of action (i. e. *state* v. *private*) was involved in a situation where other than a state agency was administering the trust. It is questionable whether that decision would have summarily disposed of the Turrentine trust as being illegal since a state agency is not directly involved in the administration of the illegal Turrentine trust. It was not until the 1960's that a series of decisions established

---

7. Restatement of the Law of Trusts, Second, § 399 (1959). Comment N, p. 305. 14 C.J.S. Charities § 52, pp. 516–517.

8. *See* Mayers v. Ridley, 465 F.2d 630 (D.C.Cir. 1971).

definitely the illegality of the type of trust provision before the Court.[9]

■■■■■ It was also suggested by defendants that the *in terrorem* clause precludes plaintiffs from seeking relief. Such a clause, however, does not prevent this Court from removing illegal provisions and validating the remainder of the trust. It has been held that actions for construction of a will or declaratory relief should not be construed as a contest of the will. Such clauses are strictly construed against forfeiture. *See* Morrison v. Reed, 6 N.J.Super. 598, 70 A.2d 799 (1950); Kolb v. Levy, 110 So.2d 25 (Fla.App.1959); George v. George, 283 Ky. 381, 141 S.W.2d 558 (1940).

This Court has considered the remaining arguments urged by the defendants and sees no necessity for further discussion since the foregoing are considered controlling in this matter.

Mr. Turrentine's dominant and overriding purpose was to aid charity generally and to provide scholarship assistance to financially deprived students who were seeking or might seek attendance at the University of North Carolina. In contrast with this larger purpose the racial limitation is one of minor significance.

Having found a general charitable intent and in utilizing *cy pres* and deviation the plaintiffs are granted summary judgment.

During the course of the proceeding Mr. Kent D. Thorup, a member of the bar of this Court pursuant to the provisions of the Soldiers' and Sailors' Relief Act of 1940, was appointed to represent the defendant Charles R. Carroll who was then a member of the Armed Forces of the United States. That counsel was requested to and filed in this proceeding a statement of services rendered which the Court has considered in the accompanying order.

9. State action and private action were further clarified in Burton v. Wilming-

ton Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).