STONE v. STOKES.

No. 9478.

United States Court of Appeals
District of Columbia.

Argued June 4, 1947.

Decided Sept. 15, 1947.

Mr. Richard H. Marriott, of Warrenton, Va., pro hac vice, by special leave of court, and Mr. Thomas M. Gittings, of Washington, D. C., for appellant.

Mr. Joseph A. Rafferty, of Washington, D. C., with whom Mr. Clarence G. Pechacek, of Washington, D. C., was on the brief, for appellee.

Before STEPHENS, CLARK, and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a judgment of the District Court construing Section 1 of the will of Sylvanus Stokes (who died in 1934), particularly clauses (e) and (f) thereof. Section 1 is reproduced in the margin.[1] The complaint asking for the construction

---

[1] "Section 1. I hereby give, devise and bequeath all my real, personal and mixed property, of whatsoever nature and wheresoever located, including all that I may acquire hereafter to Alexander Muncaster and Thomas Morton Gittings, and their heirs and assigns, in and upon the following mentioned trusts, namely, (a) to pay my just debts and the expenses of my last illness and funeral, and in the event that my funeral expenses should exceed an amount which is allowable by law, then my trustees and/or executors shall pay any such excess out of my said property; (b) to pay all my just debts by curtailment, if feasible, within the discretion of my trustees and/or executors, having in view the preservation of the corpus of my said property; (c) to give absolutely to my son, Sylvanus Stokes, Jr., and his heirs all my household effects and any articles of jewelry I may leave at the time of my death; (d) to reserve out of the gross income from my said property sufficient to pay interest, taxes, assessments, operating expenses, fire and liability and workmen's compensation insurance premiums, commissions, and a reasonable amount for the curtailment of incumbrances existing on said property, all within the discretion of my trustees and/or executors; (e) to give absolutely at the rate of fifty dollars ($50.00), free from any Federal or other tax, monthly, from the date of my death, out of the net income from said property, to Pattie H. Stokes while she is the wife of my son, Sylvanus Stokes, Jr., and/or until she re-marries; (f) when the incumbrances on my said property are reduced to fifty thousand dollars ($50,000.) then to give and convey a half of same, including the rest and residue of my said property, to the surviving child, or children per stirpes, of my daughter, Madge C. Larrabee, and his heirs, or her heirs, or their heirs as tenants in common, and to give and convey the other half of same, including the rest and residue of my said property, to the surviving child, or children per stirpes, of my son, Sylvanus Stokes, Jr., and her heirs, or their heirs as tenants in common; (g) in the event that my trustees, in their discretion, ascertain that it will not be possible to curtail the incumbrances on my said property down to fifty thousand dollars ($50,000.), then and at such time they shall cease the payments to said Pattie H. Stokes and give and convey the rest and residue of my said property to the persons mentioned in paragraph (f) hereof."

was filed by appellee, a daughter-in-law of the testator. She named as defendants the surviving trustee under the will and the testator's three grandchildren. From a judgment construing the controversial clauses favorably to appellee's contentions one of the grandchildren appeals, the others having agreed in their answer to the complaint to abide by the lower court's conclusions.

The issue raised by the complaint and separate answers of the appellant and of the surviving trustee is whether under Clause (e) appellee is to receive the sum of $50 per month for life subject to be terminated only if she ceases to be the wife of Sylvanus Stokes, Jr., or remarries in case of his death, or whether this right to $50 per month ceases when the incumbrances on the property are reduced to $50,000, as is now the case, and the property is conveyed to the grandchildren by the trustee under Clause (f). It is the contention of the appellant that the appellee's right ceases in the latter contingency.

 The crux of the appellant's contention is that what the appellee received under Clause (e) of the will was a mere right to receive money from trustees which ended when by virtue of the conveyance pursuant to Clause (f) the trustees parted with the property and brought their functions to a close. If Clauses (e) and (f) alone be regarded, and if their terms must be given a precisely literal and technical significance, the appellant's contention would be correct. But in searching for the intent of the maker of a will—which must be given effect unless inconsistent with law [2]—a court must take a broader view. The intention is to be determined "by construction of the whole will and not from detached paragraphs; and where the intention is apparent, it should be given effect—and this is true—even though to do so involves the rejection of the literal meaning of particular words." Walker v. Thomas, 1935, 64 App.D.C. 148, 150, 75 F.2d 667, 669, 99 A.L.R. 713. If explanatory and qualifying later language in a will

indicates that a non-technical meaning was intended, then the literal or technical meaning of prior language should be disregarded and the intent of the maker of the will prevail. Board of Directors of City Trusts of City of Philadelphia v. Maloney, 1944, 78 U.S.App.D.C. 371, 141 F.2d 275.

 In the light of these guiding principles of construction we think that the interpretation placed upon the will by the court below, i.e., that it was the intention of the maker that the appellee should receive $50 a month out of the property—provided her marital status remained unchanged—unless the trustees determined that the incumbrances could not be reduced to $50,000, is sound. The testator clearly had in mind one instance in which a termination of the monthly payments to the appellee should be effected since he provided in Clause (g) that in the event the trustees were not able to reduce the incumbrances to $50,000 they were to stop the payments to the appellee and convey the property to the grandchildren mentioned in Clause (f). But the appellant's reading of the will disregards the implication of Clause (g) that the payments to the appellee should not stop if the incumbrances could be reduced to $50,000; and that implication is not contrary to Clause (f) unless the latter clause is read alone and unless both Clauses (e) and (f) are read so literally and technically as to confine the rights of the appellee to a claim against the persons named as trustees rather than to a charge against the property. There is no express provision in either Clause (e) or (f) for termination of the monthly bequest so long as the prescribed marital status is maintained.

The appellant contends that the will evidences a primary and secondary intention on the part of the testator—a primary intention through the medium of a trust estate to build up the testator's small existing equities in his principal assets into substantial ones for the benefit of his grandchildren and when that had been accomplished for them to have his properties

---

[2] Finlay v. King's Lessee, 1830, 3 Pet. 346, 377, 7 L.Ed. 701; Baldwin v. National Savings & Trust Co., 1936, 65 App.D.C. 174, 81 F.2d 901.

in fee simple and for their sole use and benefit, or, in the alternative, if his trustees became of opinion it would be impossible out of the net rents to build the equities up to the desired point, then at such earlier time for his grandchildren likewise to have his properties freed of all restraint and for what they might be worth; and a secondary intent to provide, while such primary intention was being accomplished, or while an attempt was being made to accomplish it, a small monthly legacy for his daughter-in-law. The appellant relies upon Smith v. Bell, 1832, 6 Pet. 68, 78, 8 L.Ed. 322, for the proposition that "where there are two intents inconsistent with each other, that which is primary will control that which is secondary. * * *" But we think the will does not evidence such primary and secondary intents. In our view it appears clear from the provisions of Clauses (e), (f) and (g) that the testator had two courses in mind—the first that, if the incumbrances were reduced to the specified sum, the grandchildren were to receive the property subject to the charge of $50 per month payable to the appellee, and the second that, if such reduction could not be made, the grandchildren were to receive the property free from such charge. The alternatives which the testator thus provided for appear to be the result of a reasonable business judgment that, if the property were required to carry incumbrances of more than $50,000, it should not bear the additional obligation of $50 per month, but that, if the debt obligation were less than $50,000, the property could readily bear the monthly payments.

■ The appellant urges further that if the will be thought not to evidence the primary and secondary intents alluded to above, then Clauses (e) and (f) are irreconcilable, and he alludes to a rule that, where two clauses in a will are irreconcilable, the clause posterior in position is to prevail, citing 1 Jarman, Wills 473 (6th ed. 1893). This contention suffers from the defect mentioned above that it looks at Clauses (e) and (f) of the will alone and gives their terms a precisely literal and technical significance. Moreover, the rule that of two irreconcilable clauses that posterior in position shall prevail is not to be applied except upon the failure of every attempt to give the whole of the will such a construction as will render every part of it effective. This is recognized by Jarman himself; see id. at 476. It is aptly evidenced by Waters v. Trefouret, 1915, 117 Va. 186, 83 S.E. 1078, 1079. That case, although not controlling, being from another jurisdiction, is highly persuasive of the trial court's decision in the instant case. There a testatrix designated two brothers executors (one of them declined to qualify and died, survived by his wife and children) and gave the residue of her estate to them in trust. They were to administer the property, collect rents and profits, pay taxes and other charges, to pay several annuities for life (one of which was to end if the annuitant remarried), and to pay the remainder of the income from the property to the testatrix's mother for life; after her death all of the estate then remaining in the brothers' hands the testatrix gave to them and to their heirs, and assigns forever "in fee simple and without condition." The mother died, two of the annuitants surviving. In an action brought by the surviving executor against these annuitants to construe the will, the Supreme Court of Appeals of Virginia, sustaining the Circuit Court for Albermarle County, held that the annuitants were entitled to the sums named for them, as charges against the property, notwithstanding the "unconditional" devise to the brothers. The Supreme Court of Appeals said:

"Appellant, to maintain his contention, invokes the rule of construction that, when two provisions in a will are irreconcilable, the latter must prevail. This, however, is admittedly a rule of necessity, and will only be adopted to avoid the failure of both provisions for uncertainty.

"As was said by Chancellor Walworth in Covenhoven v. Shuler, 2 Paige, N.Y., 122, 130, 21 Am.Dec. 73:

" 'It is only applied in those cases when the intention of the testator cannot be discovered, and when the two provisions are so totally inconsistent that it is impossible

for them to coincide with each other, or with the general intention of the testator. The great and leading principle in the construction of wills is that the intention of the testator, if not inconsistent with the rules of law, shall govern, and that intent must be ascertained from the whole will taken together, and no part thereof to which meaning and operation can be given, consistent with the general intention of the testator, shall be rejected. * * * When the words of one part of a will are capable of a twofold construction, that should be adopted which is most consistent with the intention of the testator, as ascertained by other provisions in the will; and when the intention of the testator is incorrectly expressed, the court will effectuate it by supplying the proper words. The strict grammatical sense is not always regarded, but the words of the will may be transposed to make a limitation sensible, or to carry into effect the general intent.'

"These canons of construction were quoted with approval by this court and allowed controlling influence in the case of Price v. Cole's Executrix, 83 Va. 343, 2 S.E. 200, which was a stronger case for the application of the last clause doctrine than the case in judgment. Chancellor Walworth, at page 131 of 2 Paige, N.Y., 21 Am.Dec. 73, characterizes the rule that the last provision in a will should prevail over an antecedent provision as evidencing the final intention of the testator, 'as more fanciful than sound.' Certain it is that the principle should not be suffered to dominate when from the entire instrument the intent of the testator can be discovered.

"Thus, in Jesson v. Wright, 2 Bligh's R. 56, Lord Redesdale says:

'It cannot at this day be argued that, because the testator uses in one part of his will words having a clear meaning in law, and in another part words inconsistent with the former, that the first words are to be canceled or overthrown.'

\* \* \* \* \* \*

"Testing the will in controversy by the foregoing principles, it seems quite clear to us that it was the general intent of the testatrix that her executor should hold the principle of her estate intact, and out of the income derived therefrom pay the annuities provided for to Alfredine Jeanne Trefouret and Ida Jenny, respectively, during the whole of the natural life of each annuitant (the annuity to the former subject only to be defeated by her marriage) and 'that all the rest, residue and remainder of the income' should be paid to testatrix's mother, Sarah G. Waters, 'during the term of her natural life.' After the death of the mother, the will, in general terms, gives all the estate then remaining in the hands of testatrix's two brothers to them—to each one-half 'in fee simple and without condition.'

"The gift to the brothers is residuary in its character, and construing clause fourth in its entirety, we do no violence to the language in holding that the brothers take the corpus of the estate, charged nevertheless with the annuities referred to. It is apparent that in the preparation of the clause the two annuitants and testatrix's mother and brothers were continuously in her mind, and it is not possible that she intended to render inoperative at her mother's death annuities that she had deliberately declared should continue during the whole of the natural life of each annuitant by the subsequent residuary provision in favor of her two brothers, occurring in the same paragraph of the will. Such supposition would be irrational and wholly unjustifiable." [117 Va. at pages 189-192, 83 S.E. at pages 1079, 1080]

The judgmeent of the trial court is affirmed.