ESTATE of Jerome MITTLEMAN, Deceased, Henrietta Mittleman, Irving B. Yochelson and Solomon Grossberg, Executors, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 73–2001.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 5, 1974.

Decided Nov. 3, 1975.

Werner Strupp, Washington, D. C., for appellants.

William M. Brown, Atty., Dept. of Justice, of the bar of the Court of Appeals of Kentucky, pro hac vice, by special leave of court, with whom Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and Loring W. Post, Attys., Dept. of Justice, were on the brief for appellee.

Before ROBINSON, ROBB and WILKEY, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Jerome Mittleman died testate on October 13, 1965, while resident and domiciled in the District of Columbia. His duly probated will makes bequests to his son and others, and in its ninth paragraph creates a trust of the residuary estate "[t]o provide for the proper support, maintenance, welfare and comfort" of Henrietta Mittleman, his wife, "for her entire lifetime."[1] The trustees, who

---

1. The ninth paragraph reads:

I give, devise and bequeath all of the rest, residue and remainder of my property and estate of every nature whatsoever, that I may own or have any interest in at the time of my death, to my hereinafter named Trustees and their successors, in trust nevertheless, for the following purposes:

a. To provide for the proper support, maintenance, welfare and comfort of my beloved wife, HENRIETTA MITTLEMAN, for her entire lifetime.

b. To invade the corpus of the trust estate from time to time in the sole and exclusive discretion of the Trustees and to use all or any portion of the said corpus for the proper support, maintenance and welfare of my wife, HENRIETTA MITTLEMAN.

c. Upon the death of my said wife, HENRIETTA MITTLEMAN, the balance of the trust estate created under this article is to be paid or turned over to such person or persons or corporation or corporations as my said wife may by will appoint. If the power of appointment is for any reason not validly exercised by my said wife in whole or in part, then upon her death such portion or all of the principal of the trust or such interests or estates therein as shall not have been validly appointed by her shall be paid or

are also the executors of the estate, are authorized in their sole discretion to invade the corpus of the trust partially or wholly,[2] and upon the wife's death the balance of the corpus is to be distributed to those whom by will she may appoint.[3] If for any reason the power of appointment is not fully exercised, the unappointed estate is to pass to the testator's son if he survives, and otherwise to the son's children.[4]

Mittleman's executors filed a federal estate tax return claiming a marital deduction[5] based on the value of the estate left in the trust. The Commissioner disallowed the deduction and assessed a deficiency.[6] The Tax Court sustained the Commissioner.[7] We reverse. We hold that the relevant features of the trust, ascertained by interpretation of the ninth paragraph of the will, qualify the trust res for the deduction sought.

### I

Interests in property passing from a decedent to the surviving spouse may qualify for a deduction from the gross estate, to a maximum of one-half of its value, in determining the taxable estate.[8] The purpose underlying the deduction is equalization of the tax burden on taxpayers in common law states vis-a-vis those in community property jurisdictions.[9] While the surviving spouse is relieved of the tax on the deductible portion of the decedent's estate, that portion may eventually be taxed either as a part of the surviving spouse's estate or as a gift in the event of a gratuitous inter vivos transfer.[10]

Consistently with the theme of uniformity, Congress has limited the availability of the deduction to interests approximating the outright ownership which the surviving spouse acquires under the community property system. Accordingly, the deduction is unavailable for "terminable interests"[11]—those

---

turned over to my son, STEPHEN MITTLEMAN, but if my son, STEPHEN MITTLEMAN, does not survive my wife, such portion shall be paid or turned over to the blood or adopted children, if any, of my son, STEPHEN MITTLEMAN, in equal shares, per stirpes.

**2.** See note 1, *supra.*

**3.** See note 1, *supra.*

**4.** See note 1, *supra.*

**5.** See 26 U.S.C. § 2056(a) (1970), quoted *infra* note 8.

**6.** The Commissioner made adjustments, the subject of a stipulation by the parties, for reasons other than disallowance of the deductions.

**7.** *Estate of Jerome Mittleman,* 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 (1973). The only question tendered to the court for decision was the estate's entitlement to the deduction.

**8.** 26 U.S.C. § 2056(a) (1970) provides:

*Allowance of marital deduction.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

**9.** See *Northeastern Pennsylvania Nat'l Bank & Trust Co. v. United States,* 387 U.S. 213, 219, 87 S.Ct. 1573, 1577, 18 L.Ed.2d 726, 731 (1967); *Jackson v. United States,* 376 U.S. 503, 510, 84 S.Ct. 869, 873, 11 L.Ed.2d 871, 876 (1964); *United States v. Stapf,* 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195, 203 (1964); *Del Mar v. United States,* 129 U.S. App.D.C. 51, 53, 390 F.2d 466, 468, *cert. denied,* 393 U.S. 828, 89 S.Ct. 92, 21 L.Ed.2d 99 (1968).

"[T]he underlying purpose [of the deduction] was to equalize the incidence of the estate tax in community property and common-law jurisdictions. Under a community property system a surviving spouse takes outright ownership of half of the community property, which therefore is not included in the deceased spouse's estate. The marital deduction allows transfer of up to one-half of noncommunity property to the surviving spouse free of the estate tax." *Northeastern Pennsylvania Nat'l Bank & Trust Co. v. United States, supra,* 387 U.S. at 219, 87 S.Ct. at 1576–1577, 18 L.Ed.2d at 731.

**10.** *See Northeastern Pennsylvania Nat'l Bank & Trust Co. v. United States, supra* note 9, 387 U.S. at 219–222, 87 S.Ct. at 1577–1578, 18 L.Ed.2d at 731–732.

**11.** 26 U.S.C. § 2056(b)(1) (1971) provides in relevant part:

*General rule*—Where, on the lapse of time, on the occurrence of an event or contingen-

which will expire by lapse of time or on the occurrence or nonoccurrence of a contingency.[12] The trust before us may, however, fall within an apparent— though hardly a real—exception to the terminable-interest rule.[13] When a trust instrument confers a life estate—a terminable interest—and couples it with a general power of appointment over the trust principal, the life interest, though less than outright ownership, may nonetheless win the deduction.[14] To qualify for this exception, the trust must meet specific standards, including requirements that the surviving spouse be entitled to the entire income from the trust or some part thereof, and that the income be payable no less frequently than annually.[15]

cy, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest—

    (A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

    (B) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;

  .   .   . .

**12.** 26 C.F.R. § 20.2056(b)–1 (1975) provides in relevant part:

    (b) *"Terminable interests."* A "terminable interest" in property is an interest which will terminate or fail on the lapse of time or on the occurrence or the failure to occur of some contingency. Life estates, terms for years, annuities, patents, and copyrights are therefore terminable interests. However, a bond, note, or similar contractual obligation, the discharge of which would not have the effect of an annuity or a term for years, is not a terminable interest.

    (c) *Nondeductible terminable interests.* (1) A property interest which constitutes a terminable interest, as defined in paragraph (b) of this section, is nondeductible, if—

    (i) Another interest in the same property passed from the decedent to some other person for less than an adequate and full consideration in money or money's worth, and

    (ii) By reason of its passing, the other person or his heirs or assigns may possess or enjoy any part of the property after the termination or failure of the spouse's interest.   .   .   .

**13.** 26 C.F.R. § 20.2056(b)–1(d) (1975) provides in relevant part:

    (d) *Exceptions.* A property interest passing to a decedent's surviving spouse is deductible (if it is not otherwise disqualified under § 20.2056(a)–2) even though it is a terminable interest, and even though an in-

terest therein passed from the decedent to another person, if it is a terminable interest only because—  .  .  .

    (2) It is a right to income for life with a general power of appointment, meeting the requirements set forth in § 20.2056(b)– 5;  .  .  ..

See also note 14, *infra.*

**14.** 26 U.S.C. § 2056(b)(5) (1970) provides:

    *Life estate with power of appointment in surviving spouse.*—In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse—

    (A) the interest or such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and

    (B) no part of the interest so passing shall, for purposes of paragraph (1)(A), be considered as passing to any person other than the surviving spouse.

This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events.

See also note 15, *infra.* It is, of course, the existence of a general power of appointment that brings the interest within the rationale on which the exception is based. See text *supra* at note 9; 26 U.S.C. §§ 2041, 2514 (1970).

**15.** The requirements are enumerated in 26 C.F.R. § 20.2056(b)–5 (1975):

    (a) *In general.* Section 2056(b)(5) provides that if an interest in property passes from the decedent to his surviving spouse (whether or not in trust) and the spouse is

In the Tax Court's view, Ms. Mittleman's right did not extend to all of the income from the trust created by her husband's will, or to income distributions annually or more often.[16] The court reached these conclusions by the process of "[f]ocusing" on the first two requirements of the regulation,[17] and comparing them with the language of the ninth paragraph of the decedent's will . . . ."[18] The court felt that "[a]ccording to the plain terms of the will provision, [Ms. Mittleman] is entitled to support and maintenance for her remaining life, not to 'all of the income' from the residue of the estate. Nor is she entitled to the income 'annually or at more frequent intervals.' "[19] The court was unable to "agree with [appellants] that the wife had such command over the income that it was virtually hers."[20] "If," the court said, "the trust's income exceeded that which was sufficient for her 'support, maintenance, welfare and comfort,'[21] she would have no right to receive excess income. In such event,

the power to invade corpus lodged in subparagraph b of the ninth paragraph[22] would not come into play."[23]

We think the Tax Court erred in its decision, primarily because of the limited scope of its inquiry. The court probed no deeper than the bare language of the ninth paragraph of the will,[24] and grounded its interpretation of that paragraph on what it took to be "the plain terms of" that provision.[25] Had the court delved further and considered additional manifestations of testamentary intent, it would have been readily apparent that the terms of paragraph nine were not nearly as plain as at first blush they might seem to be, and that other factors speak more eloquently than the testator's pen.

■ On the critical issues of income entitlement and frequency of distribution, the testator's intent is dispositive.[26] To ascertain that intent, we must look first to the words he used[27]—not to particular passages in isolation, but to the

---

entitled for life to all the income from the entire interest or all the income from a specific portion of the entire interest, with a power in her to appoint the entire interest or the specific portion, the interest which passes to her is a deductible interest, to the extent that it satisfies all five of the conditions set forth below (see paragraph (b) of this section if one or more of the conditions is satisfied as to only a portion of the interest):

(1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.

(2) The income payable to the surviving spouse must be payable annually or at more frequent intervals.

(3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.

(4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.

(5) The entire interest or the specific portion must not be subject to a power in any other person to appoint any part to any person other than the surviving spouse.

16. *Estate of Jerome Mittleman, supra* note 7, 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 at 73–491.

17. See note 15, *supra*.

18. *Estate of Jerome Mittleman, supra* note 7, 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 at 73–491.

19. *Id.*

20. *Id.*

21. See note 1, *supra*.

22. See note 1, *supra*.

23. *Estate of Jerome Mittleman, supra* note 7, 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 at 73–491. Consequently, the court did not reach the Commissioner's contention that Ms. Mittleman's power of appointment was not sufficiently general in character to qualify the trust for the exemption. See note 62, *infra*.

24. See text *supra* at notes 17–19.

25. See text *supra* at note 19.

26. *E. g., In re Estate of Glover,* 150 U.S.App. D.C. 147, 149, 463 F.2d 1238, 1240 (1972); *Greenwood v. Page,* 78 U.S.App.D.C. 166, 168, 138 F.2d 921, 923 (1943); *Evans v. Ockershausen,* 69 App.D.C. 285, 290, 100 F.2d 695, 700, 128 A.L.R. 273 (1938), *cert. denied,* 306 U.S. 633, 59 S.Ct. 462, 83 L.Ed. 1034 (1939).

27. *E. g., Baker v. National Sav. & Trust Co.,* 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950); *Evans v. Ockershausen, supra* note 26, 69 App.D.C. at 291, 100 F.2d at 701.

language of the will as a whole.[28] If the intent is not then clearly disclosed on the face of the document, we must examine relevant extrinsic evidence including the circumstances surrounding the formulation of the will.[29] Local law, not federal law, governs the solution of any legal problems arising as to the meaning of the will.[30] In the quest for intent, however, prior decisions are of little value because each case hinges on its own peculiar facts.[31]

Hence, the task on this appeal is a full-scale interpretation of Jerome Mittleman's will to resolve the question whether his wife is entitled to distribution of all of the income from the trust

at intervals no greater than annually. After responding to that call, we answer the question in the affirmative.[32] The factors we identify and discuss establish beyond peradventure that the testator intended a gift of the entire trust income to the wife, and distribution thereof promptly enough to qualify the trust property for the marital deduction.

## II

The Commissioner's argument, like the Tax Court's ruling, is founded wholly on the premise that Ms. Mittleman is not entitled to all of the income generated by the trust, but only to such amounts as may be needed for her "proper support,

**28.** *Brinker v. Humphries,* 90 U.S.App.D.C. 180, 181, 194 F.2d 350, 352 (1952); *Pace v. Bradley,* 84 U.S.App.D.C. 212, 214, 171 F.2d 350, 352 (1949); *Stone v. Stokes,* 82 U.S.App.D.C. 299, 301, 163 F.2d 704, 706 (1947); *Young v. Munsey Trust Co.,* 72 App.D.C. 73, 74, 111 F.2d 514, 515 (1940).

**29.** *E. g., In re Estate of Kerr,* 139 U.S.App.D.C. 321, 331–332, 433 F.2d 479, 489–490 (1970); *Hyman v. District of Columbia,* 101 U.S.App. D.C. 179, 182, 247 F.2d 585, 588 (1957); *Costello v. Costello,* 80 U.S.App.D.C. 75, 76, 149 F.2d 379, 380, *cert. denied,* 326 U.S. 733, 66 S.Ct. 41, 90 L.Ed. 436 (1945).

**30.** 26 C.F.R. § 20.2056(b)–5(e) (1975) provides:

*Application of local law.* In determining whether or not the conditions set forth in paragraph (a)(1) through (5) of this section are satisfied by the instrument of transfer, regard is to be had to the applicable provisions of the law of the jurisdiction under which the interest passes and, if the transfer is in trust, the applicable provisions of the law governing the administration of the trust. For example, silence of a trust instrument as to the frequency of payment will not be regarded as a failure to satisfy the condition set forth in paragraph (a)(2) of this section that income must be payable to the surviving spouse annually or more frequently unless the applicable law permits payment to be made less frequently than annually. The principles outlined in this paragraph and paragraphs (f) and (g) of this section which are applied in determining whether transfers in trust meet such conditions are equally applicable in ascertaining whether, in the case of interests not in trust, the surviving spouse has the equivalent in rights over income and over the property. But while the estates and interests arising from a testamentary disposition are matters of

local law, just what estates and interests are to be taxed and to what extent are matters governed by the federal tax laws. *Helvering v. Stuart,* 317 U.S. 154, 161–162, 63 S.Ct. 140, 144–145, 87 L.Ed. 154, 159–160 (1942); *Morgan v. Commissioner of Internal Revenue,* 309 U.S. 78, 80, 60 S.Ct. 424, 425–426, 84 L.Ed. 585, 588 (1940); 26 C.F.R. § 20.2056(b)–5(e) (1975).

In the case before us the bulk of the trust corpus is personalty, and although it includes a parcel of West Virginia realty, there is no occasion to resort to the law of that state in the search for the intent underlying the income provision of the ninth paragraph. This is not a case lacking a satisfactory basis for ascertaining the intent, nor one in which the testator's words are to be given a particular legal effect irrespective of his intent. Rather, the testator's language is to be accorded the meaning that, on the basis of the available evidence, he appears to have had in mind, a process in no wise implicating West Virginia law. See Restatement (Second) of Conflicts of Laws § 223, comments *a–d;* § 240, comments *a–d;* § 268, comment *a;* § 277, comment *a* (1971). See also *Greenwood v. Page,* 78 U.S. App.D.C. 166, 168–169, 138 F.2d 921, 923–924 (1944).

**31.** *E. g., In re Estate of Glover, supra* note 26, 150 U.S.App.D.C. at 150, 463 F.2d at 1241; *Brinker v. Humphries, supra* note 28, 90 U.S. App.D.C. at 183, 194 F.2d at 353; *Fay v. Hunster,* 86 U.S.App.D.C. 224, 225, 181 F.2d 289, 290 (1950).

**32.** We arrive at the same answer to the further questions, posed by the Commissioner, whether the power of appointment conferred upon the wife meets the standard conditioning the marital deduction. See note 23, *supra,* and note 62, *infra.*

maintenance, welfare and comfort."[33] To be sure, a trust instrument explicitly directs the trustee to distribute just so much of the income as is actually required for the beneficiary's support.[34] But the Mittleman will imposes no such restriction expressly, nor in our view does it do so impliedly. Rather, when examined in its full context, the provision on which the Commissioner and the Tax Court rested their respective rulings emerges as a mere declaration of the purpose of the trust, and not as a ceiling on the life beneficiary's entitlement. We are brought to this conclusion by a number of circumstances, some within and some outside the four corners of the will.[35]

Nowhere does the ninth paragraph of the will expressly refer to the trust income.[36] Since, however, the stated goal of the trust is "to provide for the proper support, maintenance, welfare and comfort of [the wife] . . . for her entire lifetime,"[37] it is evident that a gift of income to fully serve that purpose was intended. The amount of income to be paid to the wife is not limited in terms, nor is it conditioned upon the judgment of the trustees.[38] In contrast, by the next following subparagraph the trust corpus can be invaded only "in the sole and exclusive discretion of the [t]rustees."[39] The compelling inference is that the intent was to make an unqualified disposition of the income to the wife.

Had the testator envisioned a surplus of income after expenditures for his wife's maintenance, he likely would have told the trustees what to do with it. There is, however, no direction to accumulate the income,[40] or to dispose of it otherwise than for the benefit of his wife.[41] Additionally, the power of appointment conferred upon Ms. Mittleman extends to "the balance of the trust estate" without the slightest hint as to its makeup;[42] but in the event of a default in exercise of power, the will disposes of "such portion or all of the *principal* of the trust or such interests or estates therein as shall not have been validly appointed . . . ."[43] This language indicates the more clearly that the testator contemplated no accumulation of income.

In addition, the testator gave the trustees[44] discretion to invade the corpus of the trust for his wife's benefit,[45] thus demonstrating an acute awareness of the possibility that the trust income might not be sufficient to satisfy the support needs of the beneficiary. Moreover, the discretion to invade corpus is more limited than the stated objective of the gift of the income; "comfort" is deleted,[46] further denoting a purpose to treat income differently from principal.

---

**33.** See note 1, *supra.*

**34.** See G. Bogert, Trust & Trustees § 229 (2d ed. 1965); 2 A. Scott, Trusts § 128.4 (3d ed. 1967).

**35.** See note 47, *infra,* and accompanying text.

**36.** See note 1, *supra.*

**37.** See note 1, *supra.*

**38.** See note 1, *supra.*

**39.** See note 1, *supra.*

**40.** "Strong and clear language would be necessary to permit that result," for "[t]he law does not favor the implication of a direction to accumulate income. All considerations are adverse to accumulation." *Grabois v. Grosner,* 124 U.S.App.D.C. 247, 250, 363 F.2d 979, 982 (1966).

**41.** See note 1, *supra.*

**42.** See note 1, *supra.*

**43.** See note 1, *supra* (emphasis supplied). If we accepted the Commissioner's interpretation of the will, there would be no testamentary disposition of any income accumulated should Ms. Mittleman fail to exercise her power of appointment. To this extent, that interpretation collides with the constructional canon disfavoring intestacy where a testamentary disposition of the entire estate appears to have been made. *Boys Club v. Keay,* 115 U.S.App.D.C. 247, 248, 318 F.2d 218, 219 (1963); *Warner v. Warner,* 99 U.S.App.D.C. 80, 86, 237 F.2d 561, 567 (1956); *Thropp v. Farnum,* 96 U.S.App. D.C. 175, 178, 223 F.2d 640, 643, *cert. denied,* 350 U.S. 923, 76 S.Ct. 212, 100 L.Ed. 808 (1955).

**44.** See note 54, *infra.*

**45.** See note 1, *supra.*

**46.** See note 1, *supra.*

Should these indicia of testamentary intent fail to define with sufficient certainty Ms. Mittleman's right to the trust income, we must resort to the surrounding circumstances and other evidence extrinsic to the will.[47] When that is done, the intent is displayed beyond any doubt. To begin with, the relatively small size of the trust itself readily substantiates the thesis that the beneficiary is entitled to all of the income.[48] The corpus of the trust is not large,[49] and by the same token the income it can produce is modest,[50] and falls far short of the family income before Mr. Mittleman died.[51] In contemplating the proper level of support and maintenance, a very important consideration is the recipient's station in life when the trust is created,[52] and there is nothing whatever to suggest that the testator expected a surplus after his wife's needs were met. Indeed, the evidence showed, and the Tax Court found, that "[i]n the course of administration of the trust established in decedent's will, substantially all of the income, and to some extent its principal, have been distributed to Ms. Mittleman

upon her request."[53] The strong inference here is that the testator felt that the entire trust income was necessary to enable his wife to maintain the standard of living to which she was accustomed.[54]

Moreover, it is well known that wills and testamentary trusts are customarily prepared in light of their probable tax consequences, and that, particularly where the testator is married, they are usually written to take advantage of the marital deduction. In light of the all-pervasive influence of the tax laws on estate planning, it seems entirely reasonable for courts to presume, absent contrary language, that testamentary provisions in favor of spouses are designed to qualify for the marital deduction.

In this case, however, it is unnecessary to indulge in presumption, for the evidence demonstrates that Mr. Mittleman had exactly that in mind. At the trial in the Tax Court, the attorney who drafted the will testified that when the will was drawn Mittleman voiced concern as to whether the trust would qualify for the marital deduction, and that he, the attorney, advised Mittleman that in his con-

47. See cases cited *supra* note 29. It is true that courts will consider extrinsic evidence only when the language of the will leaves its meaning in doubt. *In re Estate of Kerr, supra* note 29, 139 U.S.App.D.C. at 331–333, 433 F.2d at 489–491; *Baker v. Nat'l Savings & Trust Co., supra* note 27, 86 U.S.App.D.C. at 162–164, 181 F.2d at 274–276. But the least that can be said for the trust-income provision of the Mittleman will is that it is ambiguous as to the extent that Ms. Mittleman can claim the income.

48. *Cf.* 2 A. Scott, Trusts § 128.4, at 1019 (3d ed. 1967).

49. The gross estate, as adjusted by the Commissioner, is approximately $265,000. Subtracting expenses and debts of $39,000 and specific bequests of $67,000, the residuary estate is reduced to about $159,000 even prior to payment of federal estate and local inheritance taxes.

50. We understand that the trust yielded an income averaging only $5,200 during the period 1968 to 1971.

51. In both 1963 and 1964, Mr. Mittleman received a salary of $10,400. On his federal income tax returns for those years, he also reported dividends of about $5,600 and $7,600,

respectively. The will was drafted in June, 1965, and he died four months later.

52. *Estate of Jerome Mittleman, supra* note 7, 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 at 73–490.

53. See note 51, *supra.* We note, in this connection, the general rule that outside sources of income are disregarded in ascertaining the proper level of support. *Grollman v. Grollman,* 220 A.2d 330, 333 (D.C.App.1966); *Kuykendall v. Proctor,* 270 N.C. 510, 155 S.E.2d 293, 301 (1967); 2 A. Scott, Trusts § 128.4, at 1020 (3d ed. 1967). Other sources of support have been considered where there was evidence that the settlor so intended. See cases cited in G. Bogert, Trusts & Trustees § 811, at 208 n. 58 (2d ed. 1968). There is no indication of such an intent in this case.

54. *See e. g., Blodget v. Delaney,* 201 F.2d 589, 593 (1st Cir. 1953); *Funk v. Commissioner of Internal Revenue,* 185 F.2d 127, 131 (3d Cir. 1950); *Kuykendall v. Proctor, supra* note 53, 155 S.E.2d at 301; G. Bogert, Trust & Trustees § 811, at 201 (2d ed. 1962); 2 A. Scott, Trusts § 128.4 at 1019 (3d ed. 1967). The evidence shows without contradiction that Ms. Mittleman was named as a trustee to facilitate communication of her needs to the cotrustees.

sidered opinion it would.[55] On this testimony, the Tax Court found that "Jerome Mittleman's primary concern in this matter was to provide for his wife's future well-being and to insure that she would be free from want, as much as possible,"[56] and, further, that Mittleman "was advised by his attorneys that his will gave the estate the benefit of the marital deduction; that was his wish."[57] Mittleman's intent in that regard, then, could hardly be clearer.

As the Supreme Court has observed, "Congress' intent to afford a liberal 'estate-splitting' possibility to married couples, where the deductible half of the decedent's estate would ultimately—if not consumed—be taxable in the estate of the survivor, is unmistakable."[58] So, in interpreting a will ostensibly within this policy, courts should give due weight to the testator's desire to secure the marital deduction.[59] We recognize that the mere intention to garner a tax benefit is not decisive, or even necessarily relevant, in deciding whether a deduction is available. We hold, however, that where a testator intends to create a trust qualifying for the marital deduction, ambiguities in his will should, if possible, be resolved in favor of success in that endeavor.

The Commissioner also contends that Ms. Mittleman does not have

55. The attorney testified in the Tax Court as follows:

A: . . . I met [Mr. Mittleman] for the first time in June, 1965. At the time, we discussed changes in a will that he had previously had prepared for him by others.

Q: And what happened as a result of that conversation?

A: I prepared the will which was his final will.

. . . . .

Q: [C]an you tell us in general, according to the best of your recollection, the nature of the concerns and purposes that the decedent had at the time that he requested you to revise this earlier will?

. . . . .

[A] . . . [T]he decedent had previously had prepared by other counsel, a will which he brought to me at the time of our initial discussions. The will was substantially in the same form as [his final will], but the decedent wanted certain changes made. As I recall, he wanted some changes made in the specific requests [sic] which are enumerated in the will, but primarily and most important, he wanted changes in the trustees named in the trust created by the will

. . .

Q: According to your recollection, was there any discussion concerning the marital deduction allowance in the will?

A: There was.

Q: And are you aware of what the decedent's intent was regarding that provision?

. . . . .

[A]: Mr. Mittleman advised me that in the preparation of the earlier will, he had discussed with his counsel and with his accountant, or advisor in tax matters, the question of the marital deduction and he felt certain that the will as then prepared, which I indicated is the same as this will in its basic features, did give him the benefit of the marital deduction and, quite frankly, that was my opinion at the time, too.

Q: So then, to be perfectly clear on it, it was your understanding at the time of the drafting of this will that is now before the Court, that the decedent was availing himself of the marital deduction, is that correct?

A: That is correct.

App. at 51–54.

56. *Estate of Jerome Mittleman, supra* note 7, 42 P–H Tax Ct. Mem. Dec. ¶ 73,112 at 73–490.

57. *Id.*

58. *Northeastern Pennsylvania Nat'l Bank & Trust Co. v. United States, supra* note 4, 387 U.S. at 221, 87 S.Ct. at 1578, 18 L.Ed.2d at 732. *See also Estate of Tilyou v. Commissioner of Internal Revenue,* 470 F.2d 693, 695 (2d Cir. 1972); *Dougherty v. United States,* 292 F.2d 331, 337 (6th Cir. 1961).

59. In *Friedman v. United States,* 364 F.Supp. 484 (S.D.Ga.1973), the court decided a similar case against the Commissioner on the basis of a Georgia statute requiring distribution of all trust income at least annually. *Id.* at 488. The facts of the case at bar, apart from the absence of similar legislation, are more favorable to the taxpayer than in *Friedman,* for here the record contains uncontroverted evidence of intent to qualify for the marital deduction. In this respect, the case is similar to *Estate of James S. Todd,* 57 T.C. 288 (1971). See also *Guiney v. United States,* 425 F.2d 145, 147 (4th Cir. 1970); *Estate of Wycoff v. Commissioner of Internal Revenue,* 506 F.2d 1144, 1152–1153 (10th Cir. 1974) (dissenting opinion), cert. denied, 421 U.S. 1000, 95 S.Ct. 2398, 44 L.Ed.2d 667 (1975). No such evidence was cited by the *Friedman* court, although an assumption that people generally intend their estates to qualify was thought to be the reason for enacting the Georgia statute. *Friedman v. United States, supra,* 364 F.Supp. at 488.

the right to receive the income annually or at more frequent intervals. To the extent that this position rests upon the assumption that she is entitled to less than all of the income, it is refuted by what we have already said on that score. And to the extent that the argument proceeds from the absence of a provision specifying the times at which payments to the beneficiary are to be made, it dishonors the Commissioner's own regulations, which provide that "silence of a trust instrument as to the frequency of payment will not be regarded as a failure to satisfy the condition . . . that income must be payable to the surviving spouse annually or more frequent-

ly unless the applicable law permits payment to be made less frequently than annually."[60] Indubitably, the Commissioner is bound by the regulation,[61] and our attention has not been directed to, nor have we found, any provision of local law that would exempt this case from its operation.[62]

We hold then, that the trust created by Jerome Mittleman's will in favor of his wife satisfies the prerequisites for the marital deduction.[63] The order of the Tax Court is accordingly reversed, and the case is remanded for recomputation of the deficiency.

Reversed and remanded.

**60.** 26 C.F.R. § 20.2056(b)–5(e) (1975), quoted in full *supra* note 30.

**61.** *Service v. Dulles,* 354 U.S. 363, 372–373, 77 S.Ct. 1152, 1156–1158, 1 L.Ed.2d 1403, 1409–1411 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954); *Bonita v. Wirtz,* 125 U.S. App.D.C. 163, 167, 369 F.2d 208, 212 (1966); *Borough of Lansdale v. FPC,* 161 U.S.App.D.C. 185, 194, 494 F.2d 1104, 1113 (1974).

**62.** Lastly, the Commissioner asserts that the power conferred upon Ms. Mittleman does not enable an appointment of the trust property to her estate, a qualification for testamentary powers of appointment demanded both by statute and administrative regulation. See notes 14 and 15, *supra;* 26 C.F.R. § 20.-2056(b)–5(g) (1975). The reason the Commissioner assigns is that no authority to appoint her own estate is expressly granted. The Tax Court, ruling for the Commissioner on other grounds, found it unnecessary to pass on this contention. See note 23, *supra.*

We deem the Commissioner's position untenable. The power is clearly general, see D.C.Code § 45–1002 (1973); it is subject only to the condition that it be exercised by will—a characteristic of all testamentary powers—and that circumstance does not embarrass the marital deduction sought by appellants. See 26 C.F.R. § 20.2056(b)–5(g)(ii) (1975). The authority of the donee of a power is effectively circumscribed only by restrictions that are clearly expressed, 3 Powell, Real Property ¶ 398 at 378.40 (1974), and here we perceive none affecting Ms. Mittleman's ability to make an appointment in favor of her estate. *See Morgan v. Commissioner of Internal Revenue, supra* note 30, 309 U.S. at 78, 60 S.Ct. at 426, 84 L.Ed. at 589; *Clauson v. Vaughan,* 147 F.2d 84, 85 (1st Cir. 1945); *Commissioner of Inter-*

*nal Revenue v. Solomon,* 124 F.2d 86, 88 (3d Cir. 1941).

**63.** In so deciding, we do not impinge upon the rule that findings of fact by the Tax Court must stand unless clearly erroneous. See *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278, 290–291 & n. 13, 80 S.Ct. 1190, 1200 & n. 13, 4 L.Ed.2d 1218, 1228 & n. 13 (1960); *Farcasanu v. Commissioner of Internal Revenue,* 140 U.S.App.D.C. 398, 400–401, 436 F.2d 146, 148–149 (1970). Since the Tax Court predicated its decision exclusively upon its interpretation of the ninth paragraph of the will, its ruling was a legal interpretation, not a finding of fact. *Commissioner of Internal Revenue v. Buck,* 120 F.2d 775, 779 (2d Cir. 1941); *Welsbach Eng'r & Management Corp. v. Commissioner of Internal Revenue,* 140 F.2d 584, 586 (3d Cir.), cert. denied, 322 U.S. 751, 64 S.Ct. 1261, 88 L.Ed. 1581 (1944). And to the extent that the court failed to consider the evidence extrinsic to the will, its error was equally one of law. *Silverman v. Commissioner of Internal Revenue,* 253 F.2d 849, 852 (8th Cir. 1958). We are completely comfortable in our conclusion as to the testator's intent, for the evidence is "so overwhelmingly one way as to leave no doubt as to the fact," *Silverman v. Commissioner of Internal Revenue, supra,* 253 F.2d at 852, and any other conclusion on this record would leave us "with the definite and firm conviction that a mistake has been committed." *Commissioner of Internal Revenue v. Duberstein, supra,* 363 U.S. at 291, 80 S.Ct. at 1199–1200, 4 L.Ed. at 1228, quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541–542, 92 L.Ed. 746, 765–766 (1948). See also 26 U.S.C. § 7482(c)(1) (1970); *Sweeney v. District of Columbia,* 72 App.D.C. 30, 32, 113 F.2d 25, 27, 129 A.L.R. 1370 (1940), cert. denied, 310 U.S. 631, 60 S.Ct. 1082, 84 L.Ed. 1402 (1940); *Hughes v. Commissioner of Internal Revenue,* 451 F.2d 975, 977 & n. 5 (2d Cir. 1971).